250 So.2d 796 (1971)
John J. COLLINS, Sr.
v.
Gordon L. JOSEPH d/b/a Gordon L. Joseph & Associates.
No. 4376.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
*797 Tapper & McDougall, Elmer R. Tapper and Raymond M. McDougall, Chalmette, for plaintiff-appellee.
Bopp & Hand, Edward S. Bopp and Ronald G. Hand, Arabi, for defendant-appellant.
Before CHASEZ, GULOTTA and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit to recover unpaid wages together with the statutory penalties under the provisions of LSA-R.S. 23:631 et seq. The trial court rendered a judgment for the plaintiff employee against defendant employer granting penalties and attorney's fees under the act, and from this judgment the defendant appeals.
The defendant, Gordon L. Joseph Associates, is a marketing research firm providing data to various advertising agencies, service organizations, and other similar businesses. In conducting surveys of various sorts, Gordon L. Joseph Associates contracts with individuals on a short term basis to interview the public, primarily by telephone, and to fill in questionnaire forms, reporting the results of the interviews. These interviewers are obtained from amongst those persons on a roster of those who have previously applied. In general, the system works as follows.
A person who is interested in doing this type of work makes an application to the defendant company, and must sign and agree to a written document which reads as follows:
"I agree that any assignment that I do for Gordon L. Joseph and Associates or Gordon Research Company or clients of Gordon L. Associates are [sic] done as an independent contractor, and, as such, *798 carry my own automobile liability insurance. Also, it's my responsibility to maintain my own record of income received as an independent contractor." (This document also provides space for the prospective applicant's signature and Social Security number.)
"The Internal Revenue Department requires that we file form 1099 showing amounts paid to you on which social security or withholding tax have not been withheld."
The applicant's name is then placed upon a roster or waiting list, and when Gordon L. Joseph Associates enters into a contract to make a market survey of some sort, the various applicants are notified and asked if they wish to undertake an interview assignment. The applicant may accept or refuse an assignment, as he or she desires. If there is an acceptance, the applicants have a choice of being paid either by the hour or at a specified fee for each interview, together with reimbursement for certain expenses. The applicant is then asked how many interviews she would like to accomplish, and an agreement is then entered into between the parties that a certain amount of interviews should be accomplished within a certain period of time at the agreed upon method of payment.
In the case at hand, Mrs. John J. Collins entered into a contract with Gordon L. Joseph Associates to perform fifty (50) interviews between January 21, 1969 and January 24, 1969. She elected to be paid at the rate of $1.75 per hour, in addition to $.08 per mile for travel and cost of postage stamps. Mrs. Collins performed her services from her residence and completed the fifty (50) interviews on January 24, 1969, having worked 16½ hours, traveled 24 miles, and expended $1.40 for postage stamps. She was thus entitled to be paid the sum of $32.20, but she was not paid until a check for this amount was tendered to her on July 2, 1969.
Suit was brought on her behalf by her husband against the defendant alleging that the failure to pay the amount due Mrs. Collins came within the purview of LSA-R.S. 23:631 and 23:632. He alleges that she is entitled to be paid her salary for a period of ninety (90) days as specified in the statute as penalty (stipulated to amount to $682.00) together with attorney's fees.
Counsel for both parties have urged to us that the only question with which they are concerned is whether Mrs. Collins was an independent contractor or an employee of Gordon L. Joseph Associates. It is conceded that the statutes above referred to apply only to employees and not to independent contractors. However, we note that there is another serious issue presented to us by a simple inspection of the record, and that is whether the statutes are applicable to Mrs. Collins regardless of her contractual relationship.
The statutes read as follows:
LSA-R.S. 23:631:
"It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid." (Emphasis ours)
LSA-R.S. 23:632:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days' wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, *799 whichever is the lesser amount of penalty wages. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation. As amended Acts 1964, No. 422, § 1." (Emphasis ours)
A simple reading of those statutes quite clearly shows that they apply to a situation wherein the employee is discharged by the employer or when the employee has resigned. In the present case the record is quite clear that neither of these two events took place.
Mrs. Collins had contracted with the defendant for interviews on four different occasions extending from October, 1968, to the one in question in January, 1969. She completed the contract in question and was simply waiting to be paid within the customary six (6) to eight (8) weeks after completion. Thus the contract was over and there was nothing further for her to do. She was neither discharged nor had she resigned. In this respect we refer to the case of Chester v. Davis, 66 So.2d 377 (La.App. 2nd Cir. 1953; writ denied). This was a suit by oil field workers who were performing labor in connection with certain of defendant's drilling operations, and who alleged that they were not paid all of their salary. Accordingly, they sued for the statutory penalties of LSA-R.S. 23:631 and 23:632. In disposing of plaintiff's claims adversely, the court held as follows:
"Proceeding to a consideration of plaintiff's claims to statutory penalties, we first observe that the statutory provisions above cited have uniformly been held, in a long line of decisions, to be coercive or penal in nature, therefore to be strictly construed and yielding in interpretation and application to equitable defenses, Bielstein v. Hawkins, [La. App.] 50 So.2d 523; Oiler v. Bender, [La.App.] 146 So. 780, and the numerous cases cited therein.
The settlement and payment required are enforced by the statute and predicated upon the resignation or discharge of the employee. We have been unable to find a single evidential fact in this record which would indicate that this plaintiff either resigned or was discharged. As best we can determine the last day he worked was May 1, 1952. He was not paid until May 5, 1952, and then by a `hot' check which was evidently made good on May 20, 1952. Plaintiff repeatedly testified that defendant had asked him to `return' to work, but that he had refused until, as he expressed it, he received his `back pay'."
We are of the opinion that this circumstance would be dispositive of this case, however, we have been informed that the matter was tried under a stipulation that only the issue of employer-employee relationship or independent contractor relationship existed. While this stipulation is not contained within the record, there are some indications that some sort of stipulation was had, and rather than delaying the matter further by return to the trial court for completion of the record in this regard, we feel that we should proceed to disposition here, and so we proceed to the main issue presented.
Plaintiff's counsel argues to us that the statutes in question should be liberally construed in favor of the plaintiff as an employee, similar to the interpretation placed upon the workmen's compensation statutes. We feel that this contention was long ago laid to rest, and see no need to discuss this any further than to refer to the case of Chester v. Davis, supra, or any one of the numerous cases involving the interpretation of this statute. It is clearly a penal statute and must be strictly construed, and should not be extended beyond the plain wording of the statute. Hays v. *800 Louisiana Wildlife and Fisheries Commission, 165 So.2d 556 (La.App. 1st Cir. 1964).
In the determination of whether Mrs. Collins was an independent contractor or an employee, we must, of course, first refer to the written agreement in effect between them. The written agreement clearly set out that it is the intention of the parties that there should be an independent contractual relationship between them. In addition to this, there was another document placed into evidence which is described as a time sheet and is the document upon which Mrs. Collins presents her demand for payment upon completion of the contract, and that document contains the following language:
"As an independent contractor I hereby certify that the above is true and accurate account of the time and expenses for the work described above and the said work has not been falsified in any way."
The trial judge, apparently did not consider the language of these documents controlling, because he rendered a judgment, which, although it contained no written reasons, must have been based upon the determination that Mrs. Collins was in fact an employee. Thus it becomes necessary to examine the actual conditions existing between the parties, for we may not reverse the opinion of the trial court unless it is manifestly erroneous.
As already remarked above, the situation which existed between the parties was that Mrs. Collins was on a type of roster of prospective persons who were willing to interview persons for the defendant, and that over a period of approximately four (4) months she had been chosen to interview on four (4) separate occasions, each for a period of several days. Under this general arrangement she could accept or reject an interview assignment as she deemed fit. She had an option of the method of payment for her services and could contract for an indefinite amount of interviews as agreed upon between her and the defendant.
As to the particular contract in question, she was required to complete fifty (50) interviews within some four (4) days, and the record showed that such interviews are normally conducted at an average speed of four (4) to six (6) interviews per hour. Thus, except for the deadline of having to complete her quota, it was her own decision as to whether she could do them all in one day or at various times over the several days permitted. Within this framework she had complete freedom to determine her hours of work, and, in fact, had complete freedom to determine where and how she would work. Generally speaking the interviews were conducted by calling selected telephone numbers to seek answers to certain questions generally regarding the desirability of certain named products. Thus she could do the work wherever a telephone was available to her or, should she choose, she could have had someone actually help her do the work and call for her. The agreement between the parties simply called for her completing fifty (50) interviews in which she obtained answers to certain specific questions furnished on a questionnaire. There was no way in which the defendant could have discharged Mrs. Collins as one could an ordinary employee, because there was no supervision over the work until all of the questionnaires were turned in, and they were checked for accuracy, etc. Certainly had Mr. Joseph tried to terminate the contract before it was over, he would have been liable for breach of contract. Mrs. Collins admitted that she obliged herself to complete the entire contract as one unit because as she put it, "that is what I agreed to do".
The record shows without question that Mrs. Collins had complete freedom of movement, selection of time and manner of work without being subjected to the control and direction in the performance of her services by the defendant. Her condition was materially different from that of *801 the regular employees of the defendant who worked in the office under constant supervision and at certain prescribed hours. Additionally, we refer to the fact that there were no withholding taxes or Social Security deductions made from the payments to Mrs. Collins, but these things were withheld from those persons who worked in the office. This change in position is clearly seen in the testimony of one of Mrs. Collins' witnesses who worked both as an interviewer independently (like Mrs. Collins) and at one time in the office.
We find that the terms of the contract were such that Mrs. Collins was only governed by the will of defendant as to the result of the work to be accomplished and not as to the means by which it is accomplished. In other words she was required to complete fifty (50) interviews within the contract time, that is, to obtain the answers to certain specific questions which were to be directed by her to certain persons on a list furnished by her employer. This she could do in whatever way she thought proper and the employer was interested in only having his fifty (50) questionnaires returned to him before a certain deadline so that he could in turn make a report to his customers. The court is of the opinion that this procedure meets the tests of an independent contractor as set out in the case of Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955), relied upon by plaintiff.
We are of the opinion that the arrangement as between these two parties was that of an independent contractual relationship and not that of employer-employee. Certainly, had Mr. Joseph attempted to fire or prevent Mrs. Collins from performing her contract before the fifty (50) interviews were made she would have a right to sue him for breach of contract. In this regard we refer to the case of Dunn v. Bessie F. Hiern School, Inc., 209 So.2d 538 (La.App. 4th Cir. 1968; writ refused). In this case Mrs. Dunn was a teacher who contracted to furnish her services for the school year of nine (9) months for an agreed price which was to be paid monthly over a period of twelve (12) months.
She was improperly discharged and brought suit for breach of contract seeking the balance due her under the contract, as well as penalties and attorney's fees as provided by LSA-R.S. 23:631 and 23:632. In that case we concluded that her right was only to sue in contract under the provisions of art. 2749 of the Civil Code and that the statutory penalty and attorney's fees did not apply in such case.
For the foregoing reasons we are of the opinion that the trial judge erred in awarding statutory penalties and attorney's fees. Plaintiff is unquestionably due the contractual amount which was included in the judgment below. The stipulations show this amount to be $32.20. Therefore, the judgment is amended and recast so as to read as follows:
"It is ordered, adjudged and decreed that there be judgment herein in favor of John J. Collins, Jr., as head and master of the marital community, and against the defendant, Gordon L. Joseph, d/b/a Gordon L. Joseph & Associates, in the sum of Thirty-two and 20/100 ($32.20) Dollars, with legal interest from date of judicial demand until paid."
The trial court cast the defendant-appellant for costs and we see no abuse of discretion there. However, the costs of this appeal shall be paid by plaintiff-appellee.
Affirmed in part, reversed in part.