583 So.2d 915 (1991)
Henry L. GUINN
v.
INTERNATIONAL MAINTENANCE CORPORATION.
No. 90 CA 1341.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Rehearing Denied September 4, 1991.
Ralph W. Kennedy, Alexandria, for plaintiff-appellee Henry L. Guinn.
Leonard Cardenas, III, Baton Rouge, for defendant-appellant International Maintenance Corp.
Before LOTTINGER, SHORTESS, and CARTER, JJ.
SHORTESS, Judge.
International Maintenance Corporation (defendant) is appealing a district court judgment that awarded Henry Guinn (plaintiff) $14,882.40 in statutory penalties along with an additional $2,000.00 in attorney *916 fees for defendant's failure to pay plaintiff $33.09 in wages due him within 72 hours after he resigned his position. Plaintiff has answered the appeal urging that the award of attorney fees is inadequate and should be increased.
Plaintiff, a welder, while in the course and scope of his employment was injured on November 2, 1988, after working approximately 2.8 hours that day at the Marathon Plant in Garyville, Louisiana. He left work soon after the injury and subsequently filed a claim under worker's compensation. Defendant mailed plaintiff a check for the 2.8 hours sometime between November 2, 1988, and November 8, 1988. However, according to the testimony of plaintiff, he never received the check. Defendant upon plaintiff's request issued a new check on November 14, 1988, which was apparently sent to the field office.[1] On February 10, 1989, Ralph Kennedy, attorney for plaintiff, mailed defendant a letter informing it that plaintiff's worker's compensation suit was proceeding satisfactorily, and demanded that plaintiff receive payment for the four hours of work[2] he completed. On September 21, 1989, approximately four months after filing suit, plaintiff received the check in question.
The pertinent statutes read as follows:
§ 631. Discharge or resignation of employees; payment within three days after termination of employment
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment shall be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.
§ 632. Liability of employer for failure to pay; attorney fees.
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first *917 demand following discharge or resignation.
These statutes are penal in nature and must be strictly construed. Penalty wages are not to be absolutely imposed when the facts indicate there is an equitable defense. Magee v. Engineered Mechanical Services, 415 So.2d 277, 278-279 (La.App. 1st Cir.), writ denied, 420 So.2d 455 (La.1982). The testimony clearly establishes that plaintiff was never terminated by defendant. The testimony also establishes that plaintiff never officially resigned his position with defendant.[3] Moreover, plaintiff informed defendant that he could not go back to work because of his injuries.[4] The trial court inferred that by February 10, 1989, plaintiff had either resigned and/or was terminated because he had not been on the job site. However, the jurisprudence interpreting these statutes has shown an unwillingness to infer an important element of plaintiff's claim.
In Collins v. Joseph, 250 So.2d 796 (La. App. 4th Cir.1971), plaintiff worked for a market research firm on a per job basis. Although the court ultimately held that the statutes in question were not applicable as plaintiff was an independent contractor, the court stated that LSA-R.S. 23:631-632 applied only to a situation wherein the employee is discharged by the employer or when the employee has resigned. In Collins, the plaintiff did not introduce evidence that she was discharged or resigned. In fact, the court found that the contract was simply over and there was nothing further for her to do. The court in Collins rejected a liberal interpretation in favor of the traditional view that the statutes in question are penal in nature and must be strictly construed, and should not be extended beyond the plain wording of the statutes.
In Chester v. Davis, 66 So.2d 377 (La. App. 2d Cir.1953), an oil field worker brought suit to recover owed wages and penalties. The court rejected plaintiff's claims finding that the record was devoid of any evidentiary facts which indicate that this plaintiff either resigned or was discharged. In fact, according to the plaintiff in Chester he refused to go back to work until he received his back pay.
Here, plaintiff could not return to work after the accident because of the injury. Moveover, plaintiff was still attempting to claim worker's compensation even at the time of trial. Finally, there is no evidence in the record that defendant would not allow plaintiff to return to work once he fully recovered. Based on the above-mentioned cases, we decline to extend the statutes beyond their plain wording in this case where the plaintiff is claiming worker's compensation and introduced no evidence that he was terminated or that he informed *918 his employer that he was not returning to work.
Accordingly, the judgment of the trial court is hereby reversed with costs of the appeal assessed to plaintiff.
REVERSED AND RENDERED.
NOTES
[1] However, there is nothing in the record to indicate whether plaintiff was made aware of the location of the second check.
[2] The parties agree that plaintiff was actually entitled to only 2.8 hours rather than the four hours mentioned in the letter.
[3] On cross-examination conducted by Leonard Cardenas, attorney for defendant, the following colloquy occurred:

Q. You have not gone back to work since that date of the incident, November 2, 1988?
A. No, sir.
Q. Have you ever written to International Maintenance Corporation and told them that you quit your employment there?
A. That I quit?
Q. Correct.
A. No, sir, I never told them I quit.
Q. Are you still making a claim for worker's compensation benefits?
A. Yes, sir.
Q. Are you still claiming to be disabled?
A. Yes, sir.
Q. Nobody at work, at International Maintenance Corporation has ever told you have been fired, have they?
A. That I was fired?
Q. Right.
A. No, sir.
Q. Now, so I'm clear on this
A. I was just told by my foreman that if I do not notify somebody or report back to work within three days that I would be terminated.
Q. Did you do that?
A. Notify somebody?
Q. Right?
A. I notified International Maintenance Corporation.
Q. All right. So to your knowledge, you were not terminated.
A. No, sir.
[4] On rebuttal cross-examination the following exchange took place:

Q. You have never received a termination slip of any sort from International Maintenance Corporation, have you?
A. I never received nothing from them.
Q. And you have never told them that you are able to go back to work yet, have you?
A. I have told them that I was not able to go back to work.