COVINGTON, Chief Judge.
This case involves a dispute under LSA-R.S. 23:631 and 632 for residual commissions, penalties, and attorneys’ fees which plaintiff, Clifford Lorentz, Jr., claimed were due him within three days of his termination from employment with defendant, Ron Coblentz, d/b/a AAA-1.[1] Cob-lentz’ defense to the claim was that Lorentz was an independent contractor rather than an employee and therefore was not covered under the statutes. The trial judge found that Lorentz was in fact an employee; that no good-faith dispute was present concerning funds withheld from plaintiff allegedly to cover “call-backs” or warranties on his work as an appliance repairman; and that, therefore, penalties and attorneys’ fees were due to Lorentz. From this judgment, defendant appeals. Plaintiff has answered the appeal seeking an increase in attorneys’ fees to compensate for the additional costs of defending the appeal.
Defendant assigns as error the trial judge’s holding that Lorentz was entitled to recovery under LSA-R.S. 23:631; the trial judge’s holding that Coblentz did not have a good faith dispute regarding the amount due upon termination, and that plaintiff was not contractually obligated to perform warranty work on jobs he had previously completed; the trial judge’s award of a judgment against Coblentz individually when his company was allegedly incorporated; and the award of penalty wages and attorneys’ fees.
Defendant also argues that LSA-R.S. 23:631 is inapplicable because Lorentz *1378 was paid a commission on repair jobs performed by him rather than by the hour, day, week, or month, as the statute provides. This argument has no merit. . Commissions are considered wages for the purpose of the statute. Potvin v. Wright’s Sound Gallery, Inc., 568 So.2d 628 (La. App.2nd Cir.1990).
Defendant also urges that any penalty wages due should not have been based upon plaintiffs gross wages but rather upon his wages after expenses were deducted, and that the use of a summary proceeding as authorized under LSA-R.S. 23:631 was improper. We note that there is no evidence in the record concerning any expenses incurred by plaintiff during his employment with defendant, and therefore we cannot consider this argument on appeal. Because we agree with the trial judge on the merits that plaintiff was, in fact, an employee of Ron Coblentz d/b/a AAA-1, we likewise do not consider defendant’s argument that the use of summary proceedings was unauthorized under these facts.[2]
FACTS
Plaintiff was an appliance repairman who responded to a newspaper advertisement placed by defendant Coblentz seeking repairmen. Coblentz was in the business of advertising that his company performed appliance repairs and then, through another company, M.V. Professionals, contracting with individual repairmen to actually do the repairs. At issue here is whether Lorentz was an independent contractor or an employee.
Lorentz testified that he signed an application for employment upon his first meeting with Coblentz; Coblentz testified that it was his practice to obtain signed contracts from each of his repairmen, although no contract between Lorentz and Coblentz was found in Coblentz’ records nor introduced at trial. A contract which purported to be the standard contract was, however, introduced into the record, and in pertinent part, it reads as follows:
To assure Coblentz Enterprises that you have been advised of our contractual agreement with MVP (your employer), we require that each serviceman sign a contract attesting they have received and agree to abide by our contract with MVP.
Coblentz Enterprises, Inc. hereafter referred to as (CEI), does business under the name of AAA-1. CEI has no employees; instead, it contracts with “contracting agencies” that supply independent, (skilled contractors, hereafter referred to as servicemen). One of the companies we use as “contracting agency” is M.V. Professionals.
Servicemen, as independent contractors, will be covered by the contracting agency for Workmens’ Compensation, however, the State of Louisiana has ruled that, as a contractor, you are not entitled to Unemployment Compensation.
As a contracting serviceman, you provide your own truck, tools, and supplies. You do not work under AAA-1’s direct supervision, therefore, the following rules must be made part of our contract so that you will have a long and successful contract with us.
Following this portion of the “contract” is a section entitled “Technician Agreement on Ethics and Controls,” which dictates accounting procedures as well as various rules which the servicemen were required to follow concerning when they called in to work, when they responded to calls, and *1379 when they would be penalized by failure to abide by the “ethics and controls.” The contract further stated,
Serviceman must return all of AAA-l’s equipment, tools, beepers, vacumn [sic] pumps, invoices, business cards, signs, AAA-l’s shirts, and any and all checks or cash belonging to AAA-1 should the serviceman or AAA-1 terminate this contract for any reason, irrespective of cause. Serviceman must give 15 days notice prior to terminating this contract and agree to take all callbacks on completed jobs, for which he has been paid for a period of 90 days after termination of this contract. CEI may hold final payment for completed jobs for a period of 90 days after termination of this contract and pay reasonable charges out of the held final payment to compensate other contractors for taking your callbacks during this 90 day warranty period if you are unable or refuse to take them. Serviceman agrees to be a contractor for one of CEI’s contracting agencies and hold AAA-1 harmless for any direct, consequential, or incidental loss or damage resulting from this contract.
Coblentz testified that his practice was to enter into independent contracts with service repairmen; if they were able to provide their own insurance, then their commission was fifty (50%) percent; if they had no workmen’s compensation insurance, then their commission was forty (40%) percent and he provided workmen’s compensation and liability insurance, with an amount equal to two (2%) percent of the total commissions deducted from the repairman’s pay and applied towards workmen’s compensation insurance.
Defendant also withheld federal income tax deductions from the repairman’s pay. He testified that although he had received an opinion from the State of Louisiana that the repairmen were not employees and therefore he did not need to withhold state deductions from their pay, he had received advice from a certified public accountant that it was advisable to withhold federal payroll taxes in case of any potential liability to the Internal Revenue Service. The actual payroll was done by M.V. Professionals.
Lorentz worked for Coblentz’ business for approximately four months. He provided his own truck, his own parts stock with the exception of specialized parts which became necessary for any specific job, and on occasion hired his father as a subcontractor to help him on jobs. Servicemen were able to charge parts on accounts in the name of AAA-1, but were required to keep copies of invoices and turn them in when they turned in invoices for the work they had performed for customers.
He testified that he was required to call in every morning around 8:00; he was then given the days’ assignments and went out on calls, but was required to report in when he had finished a job and was going on to the next. He was asked to perform the jobs giving preference to certain appliance repairs as a first priority. He was on call six days a week, and was also asked to take calls on Sunday on an emergency basis but usually declined due to his wife’s poor health. He was expected to place stickers bearing AAA-l’s name in prominent locations around the home of his customers, and to wear a AAA-1 shirt, as well as place a magnetic sign on his truck bearing AAA-l’s name.
Lorentz testified that he was aware of the ninety (90) day warranty period on work, but was not aware that he was to be charged $30.00 for each callback on one of his jobs which was ultimately taken by another serviceman. He had, however, taken callbacks for other servicemen and been paid $30.00 for them. He testified he had not signed the contract which Coblentz testified all his servicemen signed, and which Coblentz remembered specifically was signed by Lorentz. During his tenure with AAA-1, he took thirty-four warranty callbacks for his own customers.
Lorentz terminated his employment around May 5, 1990. He requested pay *1380 ment in full at that time, for his reimbursement for parts in addition to his parts stock, and for his commissions. The testimony is equivocal concerning whether he agreed to take callbacks for the ninety (90) day period following his termination, but it is clear that Coblentz determined that the warranty work would not be performed by Lorentz and therefore he withheld the amount due in commissions, or $674.43, from plaintiff upon his termination. The amount was paid over a three-month period, but $145.00 in callback payments was withheld.[3] It is that amount which is disputed.[4]
The trial judge determined, from the testimony of the financial control officer of AAA-1, Pat Waldon, that Lorentz’ average pay was $109.45 per day[5] and that, therefore, under the statute his penalty commission would be 90 days times $109.45 per day, or $9,850.50. He awarded attorneys’ fees of $2,500.00; thus, the total judgment was $12,495.00, including the disputed amount of $145.00.
LAW
The primary issue to be decided in this case is whether the facts indicate that Lorentz was an independent contractor and thus not covered under the statute. Further, if he was in fact an employee, the issue is still open as to whether a good-faith dispute existed as to the callback payments, which justified Coblentz in refusing to pay Lorentz in full until the ninety-day period had elapsed.
The term “independent contractor” connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled; the relationship presupposes a contract between the parties, and it must not be subject to termination at the will of either side without a corresponding liability for its breach. It is not the actual control, but the right of control which is significant in order to find an employment relationship. Amyx v. Henry & Hall, 79 So.2d 483 (La.1955).
In this case, no actual contract was proved to have existed between the parties, and it would appear that no breach would be found were either party to terminate the relationship, based upon the language of the model contract introduced into evidence.
However, there are facts which indicate an independent contractor/contractee relationship may have existed. Lorentz drove his own truck, provided his own tools, and apparently was not subject to any control in the actual execution of his tasks during the day, although he was required to report in to the office and was subject to direction as to how, where and when he proceeded to work, although not as to how he did so.
On the other hand, Lorentz did not provide his own worker's compensation or liability insurance, and federal deductions were withheld from his paycheck, all factors which have been found to indicate an employee relationship and which the trial judge emphasized in his oral reasons for judgment. See, Collins v. Joseph, 250 So.2d 796 (La.App. 4th Cir.1971). In contrast, in Knapp v. The Management Company, 476 So.2d 567 (La.App. 3rd Cir.1985), *1381 a painting contractor with his own truck and tools, who had complete freedom of movement and was not subject to any control whatsoever by his employer, and whose employer did not withhold taxes or federal deductions from his checks, was found to be an independent contractor.
In attempting to resolve an issue of employment status, we look primarily to four factors: selection and engagement, payment of wages, power of dismissal, and control. Glover v. Diving Services International, Inc., 577 So.2d 1103 (La.App. 1st Cir.1991). We find that, in this case, the decision to hire Lorentz came from Cob-lentz; he appeared in response to an advertisement, was interviewed, and was hired. He was paid weekly, based on his commissioned repair jobs; he was not hired to complete an individual job and paid accordingly.
As to the power of dismissal, Lorentz testified that he felt if he did not call in, take calls when asked to do so, or respond promptly to calls on his beeper, he would be terminated from employment. Likewise, even the “ethics and controls” rules in the standard contract indicated that Cob-lentz exercised not only the right to control, but actual control over his repairmen — their calling in, taking calls, and general compliance with procedures were all spelled out. Regardless of whether Lorentz actually ever saw the contract, the evidence presented at trial gave a picture which corresponded with the language of the contract. In economic reality, he was subject to the control and direction of the company. Smith v. Hughes Wood Products, Inc., 544 So.2d 687 (La.App. 3rd Cir.1989). We agree with the trial judge that Lorentz was an employee, not an independent contractor.
Having so decided, we next consider the merits of Coblentz’ defense that a good faith dispute existed concerning payments for callbacks which justified paying Lorentz’ commissions over ninety days rather than within three days of demand, and withholding $145.00 in callback payments. If a good-faith dispute did in fact exist, no statutory penalties should be imposed. We agree with the trial judge that defendant did not carry its burden of proof that plaintiff was aware of the policy regarding callbacks and that he would be charged.
Coblentz testified that he did not always withhold funds from repairmen who left the company; it depended upon whether he thought they would be available to take their callbacks. There was conflicting testimony as to what exactly Lorentz stated concerning his availability. However, it was not proven that he was aware that he would not receive the amounts actually due him when he terminated his employment if he did not take his callbacks.
It is true, as defendant argues, that he could not be sure how much would actually be deducted from plaintiff’s check at the time plaintiff left the company, but nonetheless the “policy” appears to have been arbitrarily applied. There was no testimony concerning an average number of callbacks for each repairman, nor of any attempt made to calculate such a figure, deduct that from the total amount due, and pay Lorentz timely. We are aware that the statute is penal in nature and strictly construed; but when, as here, an employer is arbitrary or sets out procedural pitfalls for the employee, the penalty wages will be assessed. Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227 (La.App. 1st Cir.1991).
Additionally, we assess $1250.00 in attorneys’ fees to plaintiff for defending the present appeal. Plaintiff answered the appeal and asked for an increase in attorneys’ fees. An increase in attorneys’ fees should be awarded when a party awarded attorneys’ fees by the trial court successfully defends an appeal. Stutes v. Rossclair Construction, Inc., 575 So.2d 466 (La.App. 3rd Cir.1991). The judgment of the trial court is amended to increase the attorneys’ fees to the sum of $1250.00, and, as amended, is affirmed. All costs are to be taxed to appellant.
*1382 The judgment of the trial court is amended, and as amended, affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.

. A second defendant, Margie Valentine d/b/a M.V. Professionals, was also named in the summary proceeding and was served; however, she never entered any opposition to the rule and plaintiff did not pursue a claim against her. She was never dismissed from the proceedings, and no judgment was entered against her.

. Coblentz also raised for the first time at trial, and later on appeal in brief (although no formal specification of error relating to this argument was made), that his company was incorporated and that therefore individual liability should not be imposed against him. We find that this argument has no merit, as did the trial judge, considering the conflicting testimony as to whether the company was even incorporated, and the overwhelming testimony that Coblentz' actions in operating the company did not appear to be performed on behalf of the alleged corporation.

. There is testimony indicating that this amount was $145.00, as well as testimony indicating that it was $155.00. The stipulation is that the figure was $145.00. There was testimony that a $10.00 error was made by defendant when calculating the callback amount due. We are using the $145.00 figure for this opinion.

. The actual amount paid to plaintiff, in a three-month period following his termination, was stipulated to by the parties as $529.43. However, the copies of checks introduced by plaintiff documenting the payments after termination of $185.72 on May 25, 1990, $174.37 on July 6, 1990, and $124.50 on August 3, 1990, total $484.59. We are unable to determine the source of the discrepancy from our review of the record.

. Waldon testified on cross-examination that she was an employee of M.V. Professionals. The stipulated figure for the daily wages of plaintiff was $111.72; however, the trial judge based his calculations upon Waldon’s testimony that it was $109.45. The discrepancy is not assigned as error.