# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2013

No. 12-30570

Lyle W. Cayce
Clerk

ERIC KIRMER,

Plaintiff–Appellant,

v.

GOODYEAR TIRE & RUBBER COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-69

Before JOLLY, GARZA, and OWEN, Circuit Judges.

PER CURIAM:[*]

Eric Kirmer filed this interlocutory appeal of the district court's grant of partial summary judgment to his former employer, Goodyear Tire & Rubber Company (Goodyear). Following his termination, Kirmer filed the instant case asserting several state and federal causes of action against Goodyear. The district court granted summary judgment in favor of Goodyear on all but one of these claims. In this appeal, Kirmer challenges the district court's resolution of his claims related to Louisiana's statute governing the payment of final wages,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30570

and those related to Louisiana's whistleblower law. We affirm in part, reverse in part, dismiss in part, and remand for further proceedings.

## I

Kirmer began working as a service manager at Goodyear's Lakeside Mall retail location in the New Orleans area in August 2008. Within a month, Kirmer noticed that certain service technicians at the store were performing a basic coolant service called a drain-and-fill service, which cost $45, yet charging customers for a more elaborate coolant flush service, which cost $120. Kirmer repeatedly reported his concerns to the manager of the store starting in September 2008, but the manager took no action. In mid-January 2010, Kirmer communicated his concerns to the Goodyear district manager who oversaw a number of stores in the area.

The morning after Kirmer spoke to the district manager, he was transferred from the Lakeside Mall store to Goodyear's location at Gentilly. Kirmer's transfer to the Gentilly location involved no reduction in his salary or responsibilities. Service managers like Kirmer, however, also received bonuses based on their store's sales volume in a given month. The Gentilly location was a lower volume location at that time[1] as compared to Lakeside Mall. Although Goodyear set lower sales goals for lower volume stores, it apparently did not do so perfectly. Kirmer ultimately received some amount less in bonuses while working at the Gentilly store.

On April 8, 2010, Kirmer received a performance review for 2009, stating that his overall performance was unsatisfactory. Later that day, Kirmer called Goodyear's internal compliance hotline to report the improper billing he had witnessed at Goodyear's Lakeside Mall location and also to report that the

---

[1] The evidence shows that sales volume fluctuates and that the Gentilly location sometimes has better months than the Lakeside Mall store.

No. 12-30570

district manager and manager of the Lakeside Mall store had been retaliating against him after he had reported his concerns.

Some time later, Kirmer was transferred to Goodyear's Airline Highway location, which had a larger sales volume than the Gentilly store. On August 30, 2010 and September 6, 2010, fellow employees reported Kirmer as asleep at the store. Under Goodyear's human resources policy, "sleeping on duty" is grounds for termination. Goodyear's separation of employment policy, in turn, requires that requests for termination be approved by the district manager responsible for the area as well as Goodyear's corporate human resources department. Pursuant to this policy, the manager of the Airline Highway store submitted an exit request form for Kirmer and, on September 10, 2010, sent Kirmer home pending management review of his termination. Kirmer's termination was ultimately approved on September 14, 2010. Pursuant to Goodyear's practice, Kirmer was deemed to have been terminated on September 10, the date on which he was sent home.

Goodyear paid Kirmer the outstanding amounts owed to him—for his unpaid salary, unpaid bonus, and accrued paid vacation days—in several separate payments. Kirmer's next regular payday following his termination was September 15, 2010. On that date, his salary for the entire pay period—up to and including September 15, 2010—was direct deposited into his bank account. Kirmer's final bonus, however, was not direct deposited, since Goodyear's policy was to make bonus payments only in the form of paper checks that employees would pick up at their store. When Kirmer visited the Airline Highway store to pick up his bonus check at some point after his termination, he was told that his check was being recut because he had been overpaid—for the days of September 11 through September 15—in the direct deposit of his salary. Kirmer's corrected bonus check was available for pickup at Goodyear's Airline Highway store after September 20, but Kirmer never returned to the store. On September 30,

No. 12-30570

Kirmer, through his attorney, sent a written demand for payment of his unpaid wages to Goodyear.  On October 20, Goodyear mailed Kirmer his corrected bonus check.  Finally, although Kirmer had accrued paid vacation days, he did not receive payment for those days until March 22, 2012, ten days after he explicitly asserted that he was entitled to such payment in his Motion for Partial Summary Judgment in the present case.

Kirmer initiated the instant suit in January 2011, asserting seven state and federal causes of action against Goodyear related to his termination.  In pertinent part, he alleged that Goodyear violated Louisiana's wage-payment law, giving rise to a claim for penalty wages and attorneys' fees, by (1) failing to pay him his unpaid bonus by September 15, 2010, his next regular payday; (2) failing to pay him for his accrued paid vacation days until March 2012; and (3) deducting the amount he would have earned for the days of September 11 through September 14, 2010, from his final paycheck.  Kirmer also alleged that after his report of illegal overcharging by Goodyear technicians, Goodyear violated Louisiana's whistleblower-protection law by taking two adverse-employment actions against him: (1) transferring him from Goodyear's Lakeside Mall store to other stores and (2) terminating him.

The district court granted summary judgment to Goodyear on all but one of Kirmer's claims, the exception being his wage-payment claim regarding his vacation pay.  Kirmer later successfully petitioned the court to certify its summary judgment order as final pursuant to Federal Rule of Civil Procedure 54(b).  This appeal followed.

## II

We review the grant of summary judgment de novo, applying the same standard as the district court.[2]  Summary judgment is appropriate when "there

---

[2] *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

No. 12-30570

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine dispute of material fact exists when the evidence would permit a reasonable jury to return a verdict in favor of the nonmovant.[4] We view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor.[5] However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."[6]

## III

We first address Kirmer's several claims under Louisiana's wage-payment law. Section 23:631 of the Louisiana Revised Statutes provides that upon termination of an employee, an employer must "pay the amount then due under the terms of employment . . . on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."[7] Section 23:632 of the Revised Statutes, in turn, creates a remedy for the employee if his former employer fails to comply with section 23:631, as follows:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages

---

[3] FED. R. CIV. P. 56(a); *see Jackson*, 602 F.3d at 377.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Ramsey v. Henderson*, 286 F.3d 264, 267 (5th Cir. 2002).

[6] *Id.* at 269 (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (internal quotation marks omitted).

[7] LA. REV. STAT. ANN. § 23:631(A)(1)(a) (2010).

whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.[8]

The Louisiana Supreme Court has interpreted section 23:632 as having three essential elements: "the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand."[9] More generally, that court has explained that the wage-payment law's provisions "are designed to compel prompt payment of wages when an employee is discharged" and are "penal in nature."[10]

In the district court, Kirmer alleged that Goodyear violated the wage-payment law in three ways: (1) by not paying him his final bonus on September 15, 2010, his next regular payday, (2) by not paying him for his accrued paid-vacation days until March 2012, and (3) by not paying him for the days on which he was sent home pending management review of his termination. As noted earlier, the district court granted summary judgment on the first and third of these claims but denied summary judgment with respect to Kirmer's vacation-pay claim. Kirmer challenges all three of these rulings in this court. We consider each of them in turn.

## A

Kirmer first alleges that the district court erroneously granted summary judgment with respect to his bonus-check claim. It was Goodyear's policy to send a check each month to managers such as Kirmer for any bonuses that they may have earned from the prior month. Kirmer observes that Goodyear did not give him his final bonus check on September 15, his next regular payday

---

[8] *Id.* § 23:632.

[9] *Becht v. Morgan Bldg. & Spas, Inc.*, 02-2047, p. 4 (La. 4/23/03); 843 So. 2d 1109, 1112.

[10] *Wyatt v. Avoyelles Parish Sch. Bd.*, 01-3180, p. 7 (La. 12/4/02); 831 So. 2d 906, 912.

No. 12-30570

following his termination. This, he argues, constitutes a violation of section 23:631. Goodyear responds that (1) there was no regular payday for bonus payments, (2) as such, it had to comply only with the alternative, fifteen-day period in section 23:631, (3) which it complied with by sending a bonus check to Kirmer's former store, the place at which he would normally collect his bonus checks, on September 20, ten days after his termination. The district court held that Goodyear had complied with section 23:631 for the reasons articulated by Goodyear. We disagree.

Louisiana law follows the familiar canon of construction that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[11] In this case, section 23:631 contains such clarity. Section 23:631(A)(1)(a) provides that an employer must pay a terminated employee "the amount then due under the terms of employment . . . on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."[12] The plain meaning of this provision is that an employer must pay *everything* to which a terminated employee is entitled by the earlier of (a) his next regular payday or (b) within fifteen days. The statute's text does not suggest that, if there is a regularly scheduled payday, only those items that would otherwise be included in the employee's regular paycheck must be paid on that date, and that other

---

[11] LA. CIV. CODE ANN. art. 9 (1999) ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); *see also United States v. Dison*, 573 F.3d 204, 207 (5th Cir. 2009) ("When the plain language of a statute is unambiguous and does not 'lead to an absurd result,' [the] inquiry begins and ends with the plain meaning of that language.'" (citation omitted)).

[12] LA. REV. STAT. ANN. § 23:631(A)(1)(a).

items not normally paid in the paycheck[13] need only be paid within fifteen days of termination. Instead, the statute states that if an employee has a regular payday scheduled within fifteen days of his termination, the full amount to which he is entitled under his employment contract must be paid on that date.

Goodyear's lone counterargument is that section 23:631(A)(2) separately provides that "[p]ayment shall be made at the place and in the manner which has been customary during the employment."[14] This provision says nothing, however, about the *time* for payment.[15]

Given section 23:631's plain meaning, we can reach only one conclusion: by failing to pay Kirmer his final bonus by his next regular payday, Goodyear failed to comply with section 23:631. The bonus check was five days beyond the September 15 payday. We therefore reverse the district court's holding to the contrary and remand for further proceedings on this claim.

## B

Kirmer next alleges that the district court erroneously granted summary judgment with respect to his vacation-pay claim. Kirmer misunderstands the district court's holding. Although the district court could have been clearer in

---

[13] Such as the amount accrued as paid vacation days, *id.* § 23:631(D), or bonuses and commissions, *e.g.*, *Jeansonne v. Schmolke*, 09-1467, p. 13 (La. App. 4 Cir. 5/19/10); 40 So. 3d 347, 358 ("Commissions are considered wages for purposes of [sections 23:631-:632]." (citing *Lorentz v. Coblentz*, 600 So. 2d 1376, 1378 (La. Ct. App. 1992))); *Kearney v. Lee Med. Int'l, Inc.*, 06-597, pp. 5-6 (La. App. 5 Cir. 1/16/07); 951 So. 2d 417, 420 ("[T]he bonus falls within the ambit of [section 23:631] . . . ."); *Williams v. Dolgencorp, Inc.*, 04-139, p. 6 (La. App. 3 Cir. 9/29/04); 888 So. 2d 260, 264 ("[T]he bonus to which the appellee is entitled is considered 'wages' due under the terms of her employment."); *Thomas v. Orleans Private Indus. Council*, 95-1577, p. 7 (La. App. 4 Cir. 2/15/96); 669 So. 2d 1275, 1279-80 ("Although the contract does not designate when the bonus would be paid, that sum clearly represents remuneration for services rendered under a pay period and therefore constitutes 'wages' under §§ 631 and 632.").

[14] LA. REV. STAT. ANN. § 23:631(A)(2).

[15] In other words, section 23:631(A)(2) says only that Goodyear could have paid Kirmer by paper check at his former place of employment. Section 23:631(A)(1)(a) makes clear that such payment had to have been made on September 15.

No. 12-30570

its disposition of Kirmer's vacation-pay claim, the court explicitly held that it was not granting summary judgment to either party on Kirmer's vacation-pay claim. No other part of the district court's discussion suggests that it implicitly granted partial summary judgment on any issue to either party.

This case is before us on interlocutory appeal following the district court's entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Although the district court's certification order can be read as certifying its denial of summary judgment on Kirmer's vacation-pay claim, the district court's ruling on a claim must have disposed of that claim in order to be properly certified.[16] Since the district court's ruling did not resolve Kirmer's vacation-pay claim, it could not have been properly certified under Rule 54(b), and we have no jurisdiction to consider any objection to it in this appeal.[17] We therefore dismiss Kirmer's challenge to the district court's denial of summary judgment on his vacation-pay claim.

## C

Kirmer finally argues that the district court erred in granting summary judgment with respect to his claim that Goodyear improperly required him to forfeit his wages for the period from September 11, the day after he was sent home pending management review of his termination, through September 14, when his termination was approved. Kirmer alleges that this violated section 23:634 of the Louisiana Revised Statutes, which provides that "[n]o person . . . shall require any of his employees to sign contracts by which the employees

---

[16] *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) ("[Under Rule 54(b)], [a] district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim . . . .'" (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956))).

[17] *Eldredge*, 207 F.3d at 740; *Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992).

No. 12-30570

shall forfeit their wages if discharged before the contract is completed . . . ; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge."[18]   Kirmer's brief contains no citations to record evidence that supports his claim that his salary with Goodyear continued to accrue while he was sent home pending management review.  His brief likewise cites no law to explain why Goodyear's policy of suspending the accrual of an employee's salary while it considers whether to terminate the employee constitutes a forfeiture within the scope of section 23:634.  Kirmer presents nothing more than the bare assertion that Goodyear's policy violates section 23:634.  Given such inadequate briefing, we conclude that Kirmer's argument is waived.[19]

## IV

Kirmer also raises a number of points regarding the district court's grant of summary judgment in favor of Goodyear on his claims under Louisiana's whistleblower law.  The whistleblower law, codified at section 23:967 of the Louisiana Revised Statutes, provides that

> [a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law[,] . . . [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law.[20]

The statute further clarifies that the term "reprisal" "includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected [under section 23:967]."[21]

---

[18] LA. REV. STAT. ANN. § 23:634(A).

[19] *See Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).

[20] LA. REV. STAT. ANN. § 23:967(A)(1).

[21] *Id.* § 23:967(C)(1).

No. 12-30570

Claims under section 23:967 are analyzed under the familiar *McDonnell Douglas* framework.[22]  Under that framework, a plaintiff such as Kirmer must first establish a prima facie case of retaliation by proving (1) that he engaged in an activity protected by section 23:967, (2) that he suffered an adverse employment action, and (3) "that a causal link existed between the protected activity and the adverse employment action."[23]  Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.[24]  If the defendant provides such a reason, the burden then shifts back to the plaintiff to prove that the defendant's stated reason is pretextual and unworthy of credence.[25]  The plaintiff can meet this burden only by "proving that 'but for' the discriminatory purpose he would not have been terminated."[26]

In this appeal, Kirmer challenges the district court's summary judgment rulings in three ways.  First, Kirmer contests the district court's conclusion that his transfer from Goodyear's Lakeside Mall location to the store at Gentilly did not constitute an adverse employment action within the scope of the statute.  Second, Kirmer disputes the district court's conclusion that Goodyear advanced a legitimate, nonpretextual reason for his ultimate termination—Kirmer's

---

[22] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 805 & n.1 (5th Cir. 2007); *see also King v. Phelps Dunbar, LLP*, 98-1805, p. 7 (La. 6/4/99); 743 So. 2d 181, 187 ("Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws." (citing *Bustamento v. Tucker*, 607 So. 2d 532, 538 n.6 (La. 1992))).

[23] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).

[24] *E.g.*, *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).

[25] *Id.* (citing *Aldrup*, 274 F.3d at 286).

[26] *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005) (quoting *Pineda v. United Parcel Serv.*, 360 F.3d 483, 487 (5th Cir. 2004)) (internal quotation marks omitted).

having been caught sleeping on the job twice. Finally, Kirmer asserts that a number of additional facts precluded the entry of summary judgment. We consider each challenge in turn.

## A

Kirmer first contends that the district court erroneously concluded that his transfer from Goodyear's Lakeside Mall location to Goodyear's Gentilly location did not constitute an adverse employment action. Kirmer does not dispute that his title, salary, and responsibilities remained the same following his transfer to Goodyear's Gentilly location. Nevertheless, Kirmer asserts this transfer constituted an adverse employment action because he ultimately made less in bonuses at the Gentilly location. Kirmer's argument fails.

As noted earlier, section 23:967 defines "reprisal" (i.e., adverse employment action) as including "firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected [under section 23:967]."[27] This definition encompasses "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[28]

Kirmer's argument is unpersuasive because it rests solely on the assertion by Kirmer, without evidence of the details or context, that his "bonuses went down" following his transfer. Kirmer identifies nothing in the record regarding what he received in bonuses while employed at the Lakeside Mall location, what he received in bonuses while employed at the Gentilly location, what he would have received in bonuses at the Lakeside Mall location had he remained an

---

[27] LA. REV. STAT. ANN. § 23:967(C)(1) (2010).

[28] *Tatum v. United Parcel Serv., Inc.*, 10-1053, at p. 17 (La. App. 5 Cir. 11/15/11); 79 So. 3d 1094, 1104 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotation marks omitted).

employee at that store, or the cause of the reduction in his bonuses. The only evidence supporting Kirmer's claim is his own testimony that "[his] bonuses went down."[29] Although Kirmer's briefing implies that this statement proves that Kirmer received lower bonuses *because of* his transfer and *relative to* what he would have made at Goodyear's Lakeside Mall location, such a conclusion is mere speculation in the absence of relevant evidence.

This is particularly true in light of other undisputed evidence in the record. For example, although the record reflects that the Gentilly location had a lower sales volume than the Lakeside Mall location, Kirmer himself admitted that Goodyear's bonus system was structured to have lower sales targets for lower volume stores. Moreover, Kirmer identifies no evidence that would suggest that Goodyear's Gentilly location was designedly or systematically a lower volume store than the Lakeside Mall location. The undisputed evidence instead was that sales fluctuated at each store. More recently, for example, the Gentilly location had greater sales than the Lakeside Mall location.

Simply put, Kirmer identifies nothing in the record to suggest that any diminution in the amount of Kirmer's bonus—in other words, the adverse result that allegedly followed Kirmer's transfer—was anything other than coincidental. On these facts, Kirmer cannot show that Goodyear's transfer of him from its Lakeside Mall location to its Gentilly location was an adverse employment action. We affirm the district court's grant of summary judgment to Goodyear on this issue.

---

[29] Although Kirmer also asserts that a Goodyear witness testified that the bonuses were inevitably lower at the Gentilly location, review of the testimony reveals that the witness testified only that the Gentilly location had lower sales volume, not that employees there received lower bonuses.

No. 12-30570

## B

Kirmer next asserts that the district court erroneously concluded that he failed to demonstrate that Goodyear's stated reason for his termination—Kirmer's twice having been reported sleeping while on the job—was pretextual. Kirmer's briefing on this issue cites no legal authority and therefore is inadequate. We consequently consider this argument waived.[30] Even if it were not waived, however, there was no evidence of pretext.

## C

The remainder of Kirmer's briefing related to his section 23:967 claim is dedicated to a recitation of other facts that purportedly precluded the entry of summary judgment. Kirmer's briefing, however, makes no attempt to tie these facts to the *McDonnell Douglas* framework, either through case law or otherwise. We therefore also consider any argument based on these facts waived.[31]

\*      \*      \*

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of Goodyear on Kirmer's claim under section 23:631 of the Louisiana Revised Statutes related to the payment of his final bonus, DISMISS Kirmer's challenge to the district court's denial of summary judgment on his claim under section 23:631 related to payment of his vacation pay for want of jurisdiction, AFFIRM the district court's grant of summary judgment in favor of Goodyear on Kirmer's claims under sections 23:634 and 23:967, and REMAND to the district court for further proceedings consistent with this opinion.

---

[30] *See Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).

[31] *See id.*

14