**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

August 2, 2007

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 06-20493

Scott Nichols

Plaintiff-Appellant

v.

Enterasys Networks, Inc.

Defendant-Appellee

Appeal from the United States District Court for the Southern District of Texas

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

Scott Nichols sued Enterasys claiming that the company breached an alleged contractual agreement to pay him additional sales commissions for fiscal year ("FY") 2001, based on the terms of a sales plan governing FY2000, on the grounds that the terms of the FY2000 plan were impliedly renewed to cover FY2001. Enterasys removed the case to federal court. The district court granted the company's motion for summary judgment on the grounds that even assuming the FY2000 terms applied, Nichols could not show that Enterasys had breached the contract. After review of the record and the parties' arguments, we agree. The judgment of the district court is therefore AFFIRMED.

I.

Nichols worked as a regional sales manager for Cabletron Systems, Inc.; that company merged with defendant Enterasys in August 2001. The present appeal arises out of events occurring while Nichols worked for Cabletron.

During fiscal years (FY) 2000 and 2001, Cabletron paid its regional sales managers according to a Regional Sales Manager Plan ("the Plan"). Under the Plan, employees received a base salary plus a "commission incentive." The commission incentive operated as a reward component and was based on a commission rate "tied to sales performance relative to annual sales objectives." For all sales above a salesperson's yearly quota, the Plan allowed for an "accelerator," which paid double commission. The Plan also, however, contains the following language allocating management substantial control over compensation:

> Territory/Quota/Account Alignment
> Territories will be established and quotas determined based on company objectives, sales history, territory potential, competitiveness, and other relevant factors. Sales management reserves the right to establish or adjust quotas and geographic/account assignments at any time to provide equitable opportunities for all participants.

> Windfalls
> . . . . To insure fair and equitable treatment of both the Company and the Participant, sales management will review any sales substantially in excess of annual quota or objective. For substantial sales adjustments (positive/negative) management reserves the right to review the impact on the Plan.

Management reserves the right to make final and binding decisions regarding the amount of compensation earned and paid to any Plan Participant.

Unusual Arrangements

> .... Any undocumented agreement of any kind concerning compensation will not be honored. Any arrangement different from those provided for in this Plan must be in writing, signed by the Participant, and approved [by] Sales Management and Human Resources. No agreements will be effective until all approvals have been secured.

Each regional sales manager also received an individual goal sheet that reflected that individual's commission rate, quota, and assignments. In FY2000, Nichol's goal sheet set his commission rate at 1.8%, set his quota at $4.5 million, and assigned him, among other customers, Compaq Computer Corp. Although Nichols's total target compensation was $180,000; he actually earned $897,415 in FY2000.

Two months into FY2001, Enterasys presented Mr. Nichols with his proposed goal sheet under the Plan; the goal sheet called for a lower sales commission rate (1.54%), a higher quota, and a different set of assignments that did not include Compaq, UT Brownsville, or Metricom. The new plan, by its terms, applied retroactively to the beginning of FY2001. Nichols refused to sign the new plan. He consulted with his supervisor, who told him to continue operating under the FY2000 terms while negotiating with management. In the end, Enterasys paid - and Nichols accepted - partial commissions on his FY2001 Compaq sales; Mr. Nichols's total compensation for FY2001 came to $278,900.55. In 2002, Nichols left Enterasys.

In March 2005, Nichols filed suit in Texas state court, claiming that Enterasys breached an alleged contractual agreement to pay him additional sales commissions for FY2001, based on the terms of the FY2000 Plan. He sought economic damages equal to the difference between what Enterasys paid him and what he would have earned under the FY2000 plan, as well as

"reasonable attorney's fees." Enterasys removed the case to district court on diversity grounds.

Enterasys moved for summary judgment on Nichols's breach of contract claim. The district court granted the motion on May 2, 2006, determining that although sufficient evidence existed to "support the case being submitted to a jury for a determination of whether the parties extended the [FY]2000 plan" to cover Nichols's sales in FY2001, the case should not be submitted to the jury because the plan "unambiguously [gave] management the right" and discretion to adjust Nichols's compensation. Because "[t]he decision to lower Nichols's commission rate, raise his quota, and reassign some of his clients" fell under the provisions of the Plan quoted above, the district court reasoned, "Enterasys [was] entitled to judgment as a matter of law on Nichols's claim of breach of contract."

## II.

We review the district court's summary judgment ruling de novo. Hanks v. Transcon. Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir.1998). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. Celotex, 477 U.S. at 322-3.

## A.

Mr. Nichols's primary argument is that the terms of the FY2000 regional sales plan and his personal goal sheet created an enforceable, implied contract

in FY2001, which Enterasys breached by failing to pay him according to the FY2000 terms. According to Mr. Nichols, the contract was impliedly renewed because 1) he refused to execute the proposed FY2001 plan and 2) his immediate supervisor instructed him to operate under that plan while he negotiated new terms with management. The district court determined that although "a jury could conclude that the fiscal year 2000 plan applied to the work Nichols performed during 2001[;] . . . the terms of the 2000 plan allowed Enterasys to adjust Nichols's compensation." We need not decide the question today because even assuming, arguendo, that the FY2000 Plan applies, Mr. Nichols cannot show that Enterasys breached the terms of the FY2000 plan.

B.

As the district court observed, and as the language above reflects, the FY2000 regional sales plan clearly and unambiguously permits Enterasys "to establish or adjust quotas and . . . account assignments, as well as make final and binding decisions regarding the amount of compensation earned and paid." Furthermore, the plan clearly states that "[a]ny undocumented agreement of any kind concerning compensation" - such as that purportedly established by Mr. Nichols's conversation with his supervisor - "will not be honored." Finally, in FY2001, Enterasys paid Mr. Nichols a 1.54% commission on his sales. As a result, applying the presumption that Mr. Nichols's employment "is continued on the terms of the original contract, and provisions and restrictions forming essential parts of the contract . . . continue in force," the principle hurdle Mr. Nichols faces is that the provisions and restrictions in his FY2000 contract include the very terms giving Enterasys discretion to adjust his commission, assignments, and final compensation.

To avoid this problem, Mr. Nichols argues that 1) taking all evidence in the light most favorable to him, the trial court should have found that Enterasys waived the clauses assigning it discretion over quotas, assignments, and

compensation and 2) that those clauses "are so inconsistent with and contradictory to the plan's operative terms that they create ambiguities that cannot be enforced . . . as a matter of law." We address each argument in turn.

1.

Mr. Nichols attempts to cast his argument that Enterasys waived the clauses as a question of "whether the District Court made all reasonable inferences in the light most favorable to [the] non-movant." He notes that the District Court inferred that Enterasys decided to adjust Mr. Nichols' compensation due to his extraordinarily high earnings in FY2000, which the district court termed a "windfall", as per the portion of the plan so labeled. He argues that "windfall" is not defined in the plan, and applies the Webster's dictionary definition to argue that because he earned all of his commission, he did not enjoy an "unexpected, unearned, or sudden gain or advantage" in FY2000. Furthermore, he argues, despite his high earnings, Enterasys at no point "invoked" its right to adjust his compensation for the purposes of FY2000, thus lending credit to the assumption that Enterasys waived those provisions of the plan. Finally, he argues, at no point in FY2001 did Enterasys make a "formal invocation" of its right to adjust compensation.

These arguments fail for a number of reasons; chief among them the fact that Mr. Nichols never raised this waiver issue before the district court. He did not raise the issue in his pleadings; his arguments in his motion for summary judgment centered around 1) whether an implied contract was created at all and 2) whether the terms of the contract were so ambiguous as to be unconscionable. As the issue has not been clearly raised in front of the district court, it cannot be considered on appeal. New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 n.4 (5th Cir. 1996).

Mr. Nichols attempts to avoid this problem by arguing that the district court failed to make all reasonable inferences in his favor in determining

whether the FY2000 contract had been impliedly renewed. Waiver, however, is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987). The question of whether Nichols was operating under an implied renewal of the FY2000 contract, by contrast, deals with whether those rights can even be said to exist. Nichols's arguments improperly conflate the two issues.

In addition, even assuming that Nichols is operating under an "implied renewal" of the FY2000 plan, he fails to cite to any language in the contract requiring the kind of "formal invocation" he desires, beyond the very fact that Enterasys presented him with a copy of the new plan with the adjusted commission rate and account assignments. Furthermore, Nichols's statement that there is no evidence of any "windfall" because he earned his commissions is an extremely narrow reading of a document entitled "Regional Sales Plan" that specifically states, in reserving management's right to adjust compensation, that it reserves that right so as "to provide equitable opportunities for all participants" and that it will have the power to make such adjustment where sales are "substantially in excess of annual quota or objective" in order "[t]o ensure fair and equitable treatment of both the Company and the Participant." Moreover, as the appellee notes, the record evidence to which Nichols cites shows that Enterasys consistently compensated Nichols under its proposed FY2001 terms, and at no point adopted the FY2000 rates and assignments, regardless of what Nichols's supervisor told him. In other words, Enterasys continually operated under its proposed adjusted terms in compensating Nichols for FY2001 sales - its behavior in no way suggests it meant to waive its right to make such an adjustment.

2.

Nichols also argues that the Plan's terms are ambiguous because 1) various terms are not defined and 2) the Plan does not explain the particular impact of factors like "sales history", "company objectives", "competitiveness", and so forth on his compensation rates. Particularly, he cites the Plan's language emphasizing the desire to "provide equitable opportunities for all participants" and to "ensure fair and equitable treatment," arguing that to allow Enterasys to make such an adjustment in effect allows the company an unconscionable windfall and subjects the company's employees to "every single [corporate] whim[.]" He argues that the language allowing Enterasys discretion to adjust compensation, which he calls "boilerplate", renders the terms of his compensation "completely devoid of meaning."

Again, his arguments hold no water for several reasons, not the least of which is that under Texas state law, a person who wishes to argue contract ambiguity must affirmatively plead it, or else the argument is waived. O'Kehie v. Harris Leasing Co., 80 S.W.3d 316 (Tex.App.-Texarkana 2002, no pet.) ("Generally, one seeking to establish ambiguity in a written contract must plead it.") (citing Crozier v. Horne Children Maint. & Educ. Trust, 597 S.W.2d 418 (Tex.Civ.App.-San Antonio 1980, writ ref'd n.r.e.)). Mr. Nichols raised this argument for the first time in response to Enterasys's motion for summary judgment; it does not appear in his initial pleading.

Furthermore, Mr. Nichols presents nothing more than conclusory assertions of ambiguity. Under Texas law, undefined contract terms are generally given their plain, ordinary, and generally accepted meanings - in this case, the language is clear as to what rights Enterasys means to reserve. Mr. Nichols offers little more than the bare assertion that such language must surely be meaningless "boilerplate", and provides no alternative interpretation other than to read them out entirely. As Enterasys notes, this court has affirmed summary judgment before in cases where an appellant has "failed to produce

any evidence of a patent or latent ambiguity." See Constitution State Ins. Co. v. Iso-Tex. Inc.,61 F.3d 405, 409-10 (5th Cir. 1995).

Similarly, Mr. Nichols has failed to provide any evidence - or any legal argument beyond bare assertions - as to how the terms are unconscionable under Texas law. Where analysis is so deficient, this court has considered the issue waived for inadequate briefing. See Burnley v. City of San Antonio, 470 F.3d 189, n.10 (5th Cir. 2006).

III.

Even assuming that the FY2000 Plan applies, Nichols cannot show that Enterasys breached the terms of the FY2000 Plan in exercising rights clearly reserved to it by the Plan's language. The judgment of the district court is therefore AFFIRMED.

AFFIRMED.