# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2014

Lyle W. Cayce
Clerk

No. 13-30217

GREGORY WILLIS

Plaintiff-Appellant

v.

CLECO CORPORATION

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Gregory Willis ("Willis"), who is an African-American, filed suit against his former employer, Cleco Corporation ("Cleco"), alleging race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. After two rounds of motions, the district court granted summary judgment to Cleco on all of Willis's claims. On appeal, Willis raises three points of error. First, he argues that his retaliation claims, based on a Disciplinary Warning and being placed on a Work Improvement Plan, should not have been dismissed because he raised a genuine dispute of material fact concerning his supervisor's retaliatory motive. Second, he asserts that the district court erred in granting summary judgment on his wrongful termination claim because he offered summary judgment evidence tending to show that the stated reasons for his termination were

No. 13-30217

merely pretext for discrimination. Lastly, he contends that the district court should have reconsidered its wrongful termination ruling based on his request, which was couched within a memorandum of law submitted in opposition to Cleco's second motion for summary judgment. For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

**I**

Willis worked in Cleco's Human Resources department as a Senior Human Resources Representative. At all times relevant to this appeal, he was supervised by Ed Taylor ("Taylor"), Manager of Human Resources. Taylor reported to John Melancon ("Melancon"), the general Manager of Human Resources. Two years before his eventual termination, Willis reported to senior Cleco officials that he overheard a racially hostile conversation between Robyn Cooper ("Cooper"), a Cleco employee, and Melancon. Willis was standing outside Cooper's office when he heard Cooper assert that African-American students at a local historically black college were "dumb" and "lazy," just like the current African-Americans working for Cleco. According to Willis, Melancon remained silent when he heard Cooper make this statement. Willis claims that reporting this incident created significant retaliatory animus against him, which was the true motivation for a subsequent Disciplinary Warning, being placed on a remedial Work Improvement Plan, and his eventual termination.

Two weeks after reporting Cooper's statement, Willis sent an email to twenty-four other Cleco employees informing them that another employee's son had been hospitalized because of an overdose on a large volume of pills. That other employee, James Eli ("Eli"), allegedly informed Taylor that he did not authorize the email and that its dissemination caused him significant distress. Willis, however, claims he sent the message with Eli's permission. Thereafter, Taylor issued a formal Disciplinary Warning to Willis by placing a

No. 13-30217

letter in his personnel file on April 16, 2007.  The letter indicated that the Disciplinary Warning was based on Willis's mass distribution of a co-worker's private information, lack of good judgment, and lack of respect for others. Willis claims that these proffered justifications are merely pretext for retaliatory animus resulting from his earlier report.

Several months after the Disciplinary Warning, Willis was placed on a "Work Improvement Plan" by Taylor. Taylor alleges he took this step because Willis's job performance was inadequate during the first half of 2007. According to Cleco, a Work Improvement Plan is a developmental tool used to assist an employee in meeting performance standards. Willis claims that Work Improvement Plans are essentially punitive, because they factor negatively into an employee's promotion and salary-increase calculations. Taylor claims his implementation of a Work Improvement Plan for Willis was necessary because Willis made recurring mistakes, missed meetings, and inefficiently managed an important hiring initiative.  Willis, on the other hand, claims that he was actually placed on the Work Improvement Plan in retaliation for his earlier reporting of Cooper's racially hostile statements in conversation with Melancon.

The next year, Willis helped a personal acquaintance, Franklin Sylvia ("Sylvia"), obtain a job with Cleco.  Sylvia is biracial.  A number of months into his employment, Sylvia called Willis to ask a work-related question.  During the call, Sylvia claims that Willis made inappropriate race-based comments. Among other things, Willis allegedly told Sylvia to spend more time with other African-American employees, and to better embrace his racial heritage.  Sylvia was already concerned about his job security, and was further disquieted by this conversation.  Sylvia reported the remarks to Taylor and other Cleco supervisors.  Taylor and Melancon then arranged a meeting with Willis and related Sylvia's allegations.  Willis denied that any conversation took place.

3

No. 13-30217

However, Sylvia produced cell phone records showing that a call had been placed and that it lasted for thirty-five minutes. Willis accused Sylvia of lying. After additional investigation, Taylor and Melancon credited Sylvia's version of events, and terminated Willis. The reasons Cleco stated for Willis's termination were that he engaged in inappropriate behavior during the phone call with Sylvia, that he lied to his supervisors about the call, and that he revealed Sylvia's allegations to a non-Cleco employee. Willis claims these stated reasons are merely pretextual—that his firing was actually motivated by retaliatory or discriminatory animus.

## II

This court reviews a district court's grant of summary judgment de novo. *See Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013). Summary judgment should be granted when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a fact is material if it "might affect the outcome of the suit." *Id.* Summary judgment evidence is viewed in the light most favorable to the non-moving party—here, Willis. *See, e.g.*, *First Am. Title Ins. Co. v. Cont'l Cas. Co.,* 709 F.3d 1170, 1173 (5th Cir. 2013).

To satisfy its burden, the party opposing summary judgment is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). This court has regularly reminded litigants that "Rule 56 does not impose upon the district court [or the court of appeals] a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

4

Cir. 1998). We have further observed that the "premise of the adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Coggin v. Longview Independent School Dist.*, 337 F.3d 459 (5th Cir. 2003) (en banc).

## A

Willis's complaint stated retaliation claims arising under Title VII and § 1981. The legal framework governing these claims is coextensive. *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). "To present a *prima facie* case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Under Title VII's familiar burden shifting framework*, see, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), once the plaintiff presents a *prima facie* case, the burden shifts to the defendant-employer to "proffer a legitimate rationale for the underlying employment action." *Davis*, 383 F.3d at 319. If a legitimate reason is proffered, the burden returns to the plaintiff to demonstrate that "the employer's articulated reason for the employment action was a pretext for retaliation." *Id.* Showing pretext requires a plaintiff to "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Finally, in light of Title VII's "because of" requirement, the plaintiff must show that the protected activity was the "but for" cause of the retaliation. *Long v. Eastfield Coll.*, 88 F.3d 300, 305, 305 n.4 (5th Cir. 1996).

No. 13-30217

**1**

Willis claims that the Disciplinary Warning was issued in retaliation for his reporting of Cooper's racially hostile statements. Cleco asserts that the warning issued because Willis demonstrated a "lack of good judgment" and a "lack of respect for others" when he sent the mass email disclosing that his co-worker son overdosed on pills.[1] But Willis has proffered summary judgment evidence sufficient to show a genuine dispute of material fact about whether these stated reasons are pretext for an underlying retaliatory motive. Specifically, Willis references an affidavit from Jerome C. Ardoin, Jr. ("Ardoin"), another Cleco employee, in which Ardoin explains that Melancon, Taylor's direct supervisor in the Human Resources department, told him that he was "very pissed" with Willis for reporting the conversation with Cooper. Moreover, Ardoin's affidavit claims that Melancon stated: "If we have to find a reason, Ed [Taylor] and I have decided; we are going to terminate that nigger Greg Willis for reporting me and trying to burn my ass."[2]

If credited by a trier of fact, this statement fairly indicates that Taylor, whose direct supervisor is Melancon, issued the Disciplinary Warning because of retaliatory intent—that is, because Willis previously engaged in the protected activity of reporting the racially hostile comments Cooper made in a conversation with Melancon. Accordingly, Willis has produced the requisite "evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton*, 333 F.3d at 578. Because Willis has

---

[1] The warning letter specifically states: "Your action demonstrated a lack of good judgment and has harmed a fellow employee who was already under stress. This event demonstrated a lack of respect for the parties involved, a violation of the Cleco Guiding Principles, and undermines the high level of trust that one in your position must maintain." R. USCA5 3874.

[2] Declaration of Jerome C. Ardoin, Jr., R. USCA5 4084 (emphasis omitted).

shown that there is a genuine dispute of material fact that Cleco's stated reasons were pretextual, the district court erred in granting summary judgment on Willis's retaliation claim based on the Disciplinary Warning. [3]

## 2

Willis claims that he was actually placed on the Work Improvement Plan in retaliation for reporting Cooper's statements, and that the district court erred in granting summary judgment. This claim is waived because it is inadequately briefed. In *United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010), we summarized our precedents under Fed. R. App. P. 28:

> A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it. It is not enough to merely mention or allude to a legal theory. We have often stated that a party must 'press' its claims. At the very least, this means clearly identifying a theory as a proposed basis for deciding the case—merely intimating an argument is not the same as 'pressing' it. In addition, among other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and any Fifth Circuit Cases. We look to an

---

[3] The record in this case contains numerous depositions and affidavits chronicling Willis's employment with Cleco, the circumstances of his discipline, his eventual termination, and the allegedly racialized nature of the Cleco workplace. However, Willis's briefs—here and before the district court—give scant, if not conclusory, attention to the record: citations are minimal, and legal analysis relating facts to the law is largely absent. The party opposing summary judgment must do so by citing to specific evidence in the record. *See Ragas*, 136 F.3d at 458. That party must further "articulate the precise manner in which that evidence supports" their argument. *See Forsyth*, 19 F.3d at 1536. Notwithstanding these principles, Judge Dennis's separate opinion features lengthy discussion of record evidence that, despite its appearance in the summary judgment record, Willis did not properly cite or explain—on appeal or before the district court. However, the district court's second summary judgment order, which addressed Willis's retaliation claims, shows that the district court was specifically aware of Ardoin's statement. *See* Memorandum Ruling, Feb. 12, 2013, ECF No. 157, at 12. Thus, even though "Rule 56 does not impose . . . a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," *Ragas*, 136 F.3d at 458, the district court actually considered this evidence. Accordingly, our reversal of this claim is based on an argument before the district court.

appellant's initial brief to determine the adequately asserted bases for relief.

*Id*. at 446–47 (citations and quotations omitted). Willis's legal argument about the Work Improvement Plan claim is asserted in these two sentences:

> A reasonable jury looking at the facts in a light most favorable to Willis could infer that Cleco's reasons for placing Willis on the Work Improvement Plan were pretextual. Therefore, the court granting Cleco's Motion for Summary Judgment as to Willis retaliation claims should be reversed.[4]

In this, Willis fails to identify a theory as a proposed basis for deciding the claim, and does not explain, in any perceptible manner, why the facts would allow a reasonable jury to decide in his favor. This claim is inadequately briefed, and we hold that it is waived.[5]

## B

Willis also appeals from the district court's adverse grant of summary judgment on his Title VII wrongful termination claim. Wrongful termination claims are also evaluated under the *McDonnell Douglas* framework. *See McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). To establish a

---

[4] Three additional sentences in Willis's brief provide introductory and factual content for the claim: "On August 15, 2007, Mr. Willis was placed on a Work Improvement Plan. Up until his reporting Melancon, Willis had been a model employee for the HR department. The District Court's [sic] found that Melancon and Taylor harbored retaliatory/discriminatory animus toward Willis." The entirety of Willis's briefing on the Work Improvement Plan claim is contained in this short, conclusory paragraph, which does not include any citations to the record or internal references to other sections of his brief.

[5] In *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007), Nichols failed to provide "any evidence or any legal argument beyond bare assertions" showing how a contract term was unconscionable. *Id.* "Where analysis is so deficient, this court has considered the issue waived for inadequate briefing." *Id. See also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 407 (5th Cir. 2009) (a single sentence claim that a subrogation clause required payment, without further explanation, justified waiver on grounds of inadequate briefing).

*prima facie* case, a plaintiff must demonstrate that he, "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Id.* Under the fourth prong's "similarly situated employees" requirement, a plaintiff must show that he was treated less favorably than others "under nearly identical circumstances." *Love v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir. 2009). Once a *prima facie* case is established, the defendant can offer a non-discriminatory reason for the termination, which may then be rebutted by the plaintiff as pretext. *See supra* Part II.A.

The district court determined that Willis had not established a *prima facie* case. Specifically, the court found that Willis did not demonstrate that he was "treated less favorably than other similarly situated employees outside the protected class." The district court found that Willis did not identify a similarly situated comparator—another employee who was treated differently "under nearly identical circumstances." The district additionally further concluded that Willis failed to establish that Cleco's stated non-discriminatory reason for his termination was pretextual.

On appeal, Willis does not challenge the district court's holding that he failed to establish a *prima facie* case—he only challenges the district court's pretext conclusion. Thus, he has waived appellate review of the district court's prima facie case determination. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived."). Because a plaintiff must establish a *prima facie* case to

prevail on a claim of wrongful termination under Title VII, analysis of the pretext stage cannot change the disposition of this claim.[6]

## C

Willis last contends that the district court erred in failing to reconsider its ruling on his wrongful termination claim, following the first summary judgment order. Willis did not formally seek reconsideration by motion. Rather, the request was couched at the end of an eighteen page memorandum of law.[7] Assuming, without deciding, that this was sufficient to raise the issue, we find no merit in his argument. *See supra* Part II.B. Additionally, contrary to Willis's several contentions on appeal, nothing in the record shows that the district court provided an unfair "second bite at the apple" to Cleco in allowing a second motion for summary judgment. Rather, the record reflects that all parties were allotted additional, and equal, time for discovery and motions after the ruling on the first motion for summary judgment.

## III

For the foregoing reasons we REVERSE the district court's grant of summary judgment on Willis's retaliation claim arising from the April 16, 2007 Disciplinary Warning, AFFIRM the district court's grant of summary judgment on the remaining retaliation and discrimination claims, and REMAND for further proceedings consistent with this opinion.

---

[6] Judge Dennis' partial dissent does not account for Willis's fundamental failure to appeal the district court's determination that he had not established a *prima facie* case. As explained above, this is a necessary predicate for success on his wrongful termination claim. The compelling narrative Judge Dennis draws from the record—despite the inadequacy of Willis's appellate arguments—is insufficient to overcome this legal obstacle.

[7] Willis's Second Memorandum in Opposition to Cleco's Second Motion for Summary Judgment.

No. 13-30217

JAMES L. DENNIS, Circuit Judge, concurring in part, dissenting in part:

I concur in the majority's decision that plaintiff-appellant Gregory Willis should proceed to trial on his claim that the disciplinary warning constituted illegal retaliation. The heart of this retaliation-and-race-discrimination case, however, is not the disciplinary warning, which is alleged to have been a mere stepping stone, but is rather the later termination of Willis's employment in Cleco Corporation's human resources department. According to Willis and his supporting evidence in the record, he reported to Cleco corporate executives that he overheard a racist conversation between the head of his department, John Melancon, and another coworker about the company's hiring practices and whether the company should recruit African-American employees. After he learned that Willis reported him for participating in the racist conversation, Melancon told a colleague that he was "very pissed," that he was "not going to forget" Willis's slight, and that he had decided to "terminate that nigger." Over the next two years, allegedly for other reasons, Willis was disciplined, given a poor performance review, and, finally, fired. On the day he was fired, Willis says that Melancon came to his home to deliver the news and added, "Boy, you will keep your mouth shut now." This and additional evidence adduced by Willis, as outlined below, conflicts with the employer's reasons for the discharge and raises genuine issues as to what motivated the discharge, making summary judgment for the employer inappropriate based on the record in this case. The evidence that Willis's discharge was motivated by retaliation and, at least in part, by racial discrimination is too strong and pervasive to ignore or compartmentalize. I respectfully dissent from the denial of these claims.

## I.

To survive Cleco Corporation's motions for summary judgment on his retaliation and race discrimination claims, Willis must establish that there is

11

a genuine issue of material fact.[1] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).   An examination of Willis's evidence submitted in opposition to Cleco Corporation's motions reveals that there can be little question that Willis has carried his burden.   Willis's evidence, with supporting citations to the record on appeal, is as follows.

## A.

Willis, who is African-American, started working in Cleco Corporation's human resources department in 2000.[2]   Several years later, he was promoted to the position of senior human resources representative.[3]   From 2005 until his termination in 2009, his direct supervisor was Ed Taylor, manager of human resources.[4]   Taylor, in turn, reported to John Melancon, general manager of human resources.[5]

Over their years working at the company, Willis and two of his coworkers, Jerome C. Ardoin, Jr. and Patrick Lacour, claim to have overheard statements by Taylor and Melancon that were charged with racism:

### ***Melancon***

---

[1] On September 17, 2010, Cleco Corporation moved for summary judgment on all of Willis's claims.  R. 373-77 (District Court Doc. No. 35).  On September 22, 2011, the district court granted the motion in part and denied it in part.  *Id.* at 3335-71 (District Court Doc. No. 105), 3372-73 (District Court Doc. No. 106).  On March 8, 2012, Cleco Corporation filed a second motion for summary judgment addressing Willis's claims that survived the first motion.  *Id.* at 3812-17 (District Court Doc. No. 137).  Willis opposed the motion and asked the district court to reconsider the district court's resolution of the first motion.  *Id.* at 4045-63 (District Court Doc. No. 149).  The district court denied Willis's request and granted the company's second motion for summary judgment, thus disposing of all of Willis's claims of retaliation and race discrimination.  *Id.* at 4724-45 (District Court Doc. No. 157), 4746 (District Court Doc. No. 158).

[2] *Id.* at 384-86 (Willis Dep.), 455 (Taylor Decl.).

[3] *Id.*

[4] *Id.* at 389-92 (Willis Dep.).

[5] *Id.* at 394 (Willis Dep.), 4424 (Taylor Dep.).

No. 13-30217

- According to Ardoin, who is white and who worked with Melancon for over two decades, Melancon referred to African-Americans as "niggers" and "coons" on "numerous occasions."[6]
- According to Lacour, who is white, Melancon once told him that he refused to allow his family to live in Alexandria, Lousiana because "there are too many black people who live over there."[7]

### *Taylor*

- According to Willis, Taylor referred to African-Americans sometimes as "colored people."[8]
- According to Willis, Taylor told him on several occasions that the first time he saw an African-American man, he thought the man "looked like a gorilla."[9]

**B.**

Willis alleges that, on March 2, 2007, he overheard a conversation between Melancon and Robyn Cooper, a corporate communications representative.[10]  Willis says that he overheard Cooper ask Melancon, in reference to a company recruitment trip, "Why are you all going to Grambling State University?"[11]  Grambling State University is a historically black institution.  Willis says that Cooper continued:

> As you are aware, those students are dumb.  They are no different than the dumb and lazy blacks that work at this company.  If you don't hire any of them, what are they going to do?  Are they going to go to the NAACP?[12]

Melancon remained silent while Cooper was speaking, which Willis interpreted to mean that Melancon was a "willing audience."[13]

---

[6] *Id.* at 4082 (Ardoin Decl.).

[7] *Id.* at 4146 (Lacour Decl.).

[8] *Id.* at 4189 (Willis Decl.).

[9] *Id.* at 4191 (Willis Decl.).

[10] *Id.* at 392-99, 440 (Willis Dep.), 453-54 (Letter from Willis to George Bausewine, Sr., Vice President of Support Services, Cleco Corp.).

[11] *Id.*

[12] *Id.*

[13] *Id.*  Melancon denies that Cooper said anything inappropriate to him.  He says:

No. 13-30217

Willis says that he was troubled by the fact that Melancon, the general manager of human resources, had listened to such sentiments about the company's recruitment practices without taking exception.[14] Willis reported the conversation to Jeff Hall, the company's chief diversity officer, and George Bausewine, the senior vice president of corporate services.[15] He drafted and gave a memorandum describing the conversation to Bausewine.[16]

According to Willis, during the following months of spring of 2007, his relationship with Melancon broke down severely.[17] Melancon was furious and stopped speaking to him for months.[18] Coworkers advised Willis to try to "build a bridge" with Melancon, but Willis was "uncomfortable" doing so because Melancon had started making "derogatory" comments about him around the office.[19] Willis says that he sought advice from Taylor about his difficulties with Melancon and that Taylor told him, "You should not have reported John [Melancon]."[20] Taylor continued, "You wouldn't have these problems you're having right now."[21] Taylor's only advice, Willis says, was to try to work things out with Melancon.[22]

---

Cooper never made disparaging remarks regarding African-Americans. In that conversation between Cooper and myself, I simply explained to Cooper some of the actions and initiatives Cleco was taking with regard diversity, which included visiting Grambling State University, so that she could consider writing an update regarding Cleco's diversity efforts.

Id. at 462 (Melancon Decl.).

[14] Id. at 392-99, 440 (Willis Dep.), 453-54 (Letter from Willis to George Bausewine, Sr., Vice President of Support Services, Cleco Corp.).

[15] Id.

[16] Id.

[17] Id. at 3834 (Willis Dep.).

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Id.

14

No. 13-30217

Willis says that he retrieved the memorandum he had sent to Bausewine describing the conversation about the trip to Grambling and he brought it into Melancon's office, set it on the table, and said that he wanted to talk about it.[23] According to Willis, Melancon ordered him to close the office door.[24] Then, Melancon slammed his hand on the table and declared, "You tried to burn my ass and I am not going to forget that."[25] Willis responded, "Look, I did not report you. My memo said, *she* [*i.e.,* Cooper] was making the comments and you were her audience."[26] This did not assuage Melancon's anger.[27]

Around this same time, Ardoin claims that Melancon told him that he was "very pissed" with Willis for reporting his conversation with Cooper about the Grambling recruitment trip and that, "If we have to create a reason, Ed [Taylor] and I have decided—we are going to terminate that nigger Greg Willis for reporting me."[28]

## C.

On March 15, 2007, Willis sent an email to twenty-four coworkers saying that the son of a colleague, James Eli, overdosed on "thirty one pills."[29] Willis's email asked the coworkers to pray for Eli's son.[30] According to Willis, Eli asked him to send the email to his friends at the company.[31] But, on April 16, 2007, Taylor and Melancon issued a disciplinary warning to Willis, stating that Willis's email caused Eli and his wife "considerable pain and distress" and that

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 3834 (Willis Dep.), 4185-86 (Willis Decl.).

[26] *Id.* at 3834 (emphasis added).

[27] *Id.*

[28] *Id.* at 4084 (Ardoin Decl.).

[29] *Id.* at 3858-59 (Willis Dep.), 3874-75 (Disciplinary Warning), 3876-77 (Taylor Decl.).

[30] *Id.*

[31] *Id.*

No. 13-30217

Willis was "advised to use better judgment," and a failure to do so "could result in further disciplinary action including suspension or termination."[32]

### D.

On August 15, 2007, Taylor put Willis on a work improvement plan, citing his purportedly poor job performance.[33] According to Willis, as a result of the improvement plan, he was unlikely to receive a salary increase that year.[34] Willis says that Taylor told him that the improvement plan was necessary because Willis "caused morale problems" at the company when he reported the conversation about the Grambling recruitment trip between Cooper and Melancon.[35] Willis says that Taylor told him, "Cooper is upset."[36]

### E.

During late 2008 and early 2009, a series of events culminated in the termination of Willis's employment. In 2008, Willis helped Franklin Sylvia obtain a job at the company.[37] Sylvia says that he called Willis, on Willis's cell phone, on January 21, 2009 to discuss issues involving workplace rumors about whether Sylvia had, as some believed, reported a coworker for sleeping during a training class.[38] According to Sylvia, during that conversation, Willis veered off topic and lectured Sylvia about his racial heritage (Sylvia has one black parent and one white parent), telling him generally that he should not be ashamed of his African-American roots, that he should not reject who he is, and that he should spend more time with black coworkers.[39]

---

[32] *Id.* The disciplinary warning states that it is "From: Ed Taylor," but the document is signed by both Taylor and Melancon.

[33] *Id.* at 3877-78 (Taylor Decl.).

[34] *Id.* at 3828-29 (Willis Dep.).

[35] *Id.* at 3837 (Willis Dep.).

[36] *Id.*

[37] *Id.* at 479-82 (Sylvia Decl.).

[38] *Id.*

[39] *Id.*

No. 13-30217

Sylvia says that he was troubled by the conversation, which he considered inappropriate "race instruction," and feared that it may have implications for his future employment at Cleco given Willis's position in the human resources department and the influential role Willis played in his hiring.[40]   Sylvia reported the conversation to Taylor, prompting an investigation.[41]   The investigation was carried out by Taylor and Melancon, who worked together closely.[42]   On February 2, 2009, Taylor and Melancon summoned Willis into Melancon's office and confronted him about Sylvia's allegations of an inappropriate phone conversation.[43]   At the meeting, Willis denied that the alleged call ever happened.[44]   The next day, Taylor and Melancon met with Sylvia and confirmed that Sylvia's cell phone showed a record of a call between Sylvia's and Willis's cell phones on January 21, the day the alleged inappropriate conversation occurred.[45]   Willis, however, continued to deny that the call ever occurred.[46]   Taylor and Melancon decided to credit Sylvia's allegations over Willis's denials.[47]

On February 4, 2009, Willis was fired purportedly for the inappropriate phone conversation and for lying about his involvement in it.[48]   Willis says that Taylor and Melancon came to his home to deliver the news and that, after Melancon told him that he was fired, Melancon said, "Boy, you will keep your mouth shut now."[49]

---

[40] *Id.*

[41] *Id.* at 481 (Sylvia Decl.), 456 (Taylor Decl.).

[42] *Id.* at 457-58 (Taylor Decl.).

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 458 (Taylor Decl.), 464 (Melancon Decl.).

[48] *Id.*

[49] *Id.* at 4186 (Willis Decl.).

No. 13-30217

## II.

Under Title VII of the Civil Rights Act of 1964, it is illegal for an employer to discharge an employee or otherwise discriminate against him with respect to the terms, conditions, or privileges of employment because of race. 42 U.S.C. § 2000e-2.  It is also illegal for an employer to retaliate against an employee for objecting to illegal workplace discrimination.  *Id.* § 2000e-3.  In this lawsuit, Willis claims that Cleco Corporation, through Taylor and Melancon, his supervisors in the human resources department, did both.

The question before the court on summary judgment is whether Willis has put forth sufficient evidence to create a genuine dispute as to whether Cleco Corporation discriminated against him on the basis of race or retaliated against him for objecting to race discrimination at the company.  In considering the evidence in the record, this court must draw all reasonable inferences in favor of Willis, the non-moving party, and may not make credibility determinations or weigh the evidence.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Willis's, Lacour's, and Ardoin's testimony, drawing all reasonable inferences therefrom, establishes that Willis's boss, Melancon, often referred to African-Americans as "niggers" and "coons."  Willis overheard and reported a racist conversation about company hiring policies between Melancon and another.  Melancon was furious.  He told Willis that he would "not forget" Willis's slight.  He told Ardoin that he had decided "to terminate that nigger."[50] Weeks later, Willis was disciplined for sending an email involving private matters of a colleague (Eli's son's overdose) that Willis believed he was authorized to send.  A few months later, Willis was given a poor performance

---

[50] It has been said that, in discrimination cases, "there will seldom be 'eyewitness' testimony as to the employer's mental processes."  *Reeves*, 530 U.S. at 141.  This is one of the rare cases in which there is "eyewitness" testimony—here, Ardoin's.

18

review because, as Taylor put it, he "caused morale problems" when he reported Melancon's involvement in the racist conversation.  Then, about a year and a half later, Melancon and Taylor came to Willis's home, told Willis that he was fired for having an inappropriate phone conversation with Sylvia and lying about it (which Willis denies), and Melancon added, "Boy, you will keep your mouth shut now."  This evidence is, without question, sufficient for Willis to satisfy his burden on summary judgment to demonstrate genuine issues as to material fact.

True, when Willis was fired, the termination decision may have been based on the combination of both illegitimate considerations (*i.e.*, retaliatory or racist ones) and legitimate ones (*i.e.*, the perception, correct or not, that Willis was dishonest in the company's investigation of the alleged inappropriate phone conversation he had with Sylvia) together.  This possibility of "mixed motives," however, does not defeat Willis's claims.

As for Willis's retaliation claim, Cleco commits illegal retaliation if the termination would not have occurred "but for" Willis's protected activity.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).  Again, it is clear that there is sufficient evidence to support a reasonable inference that Willis would not have been terminated if he had not reported discrimination at the company.  Although some time had passed between when Willis allegedly infuriated Melancon by reporting his conversation about the Grambling recruitment trip and when Willis was fired, the jury could reasonably infer that Melancon, working with Taylor, had accomplished exactly what Melancon promised: "If we have to create a reason," "we are going to terminate that nigger Greg Willis for reporting me."  It is a reasonable inference that, once Sylvia complained about Willis's allegedly inappropriate conduct, Melancon and Taylor found their "reason."

As for Willis's race discrimination claim, Cleco commits illegal discrimination if race is a "motivating factor" in the termination.  42 U.S.C. § 2000e-2(m).  Here, it is clear that there is sufficient evidence to find that, when Willis's employment was terminated by Melancon, who allegedly referred to Willis as "that nigger," race was a "motivating factor" in the decision.

The majority faults Willis for not identifying a "similarly situatuated comparator," that is, another Cleco employee "who was treated differently [than Willis] under nearly identical circumstances."  *Ante*, at 9, 10 n.6.  The majority's argument is without merit.  Where the evidence is that an employee's boss announces that he has decided to "terminate that nigger," neither the law nor common sense requires the employee to show "similarly situated comparators" in order to prove that race was a motivating factor in the termination.  *See, e.g.*, *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) (use of the term "nigger," a "universally recognized opprobrium [that] stigmatiz[es] African-Americans because of their race," is direct evidence of discrimination).

Summary judgment in favor of Cleco Corporation is inappropriate here.

I respectfully dissent from the majority's denial of Willis's claims of discriminatory and retaliatory termination.  I concur in allowing Willis's claim regarding the disciplinary warning to go to trial.