# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-10508

United States Court of Appeals
Fifth Circuit

**FILED**

April 6, 2016

Lyle W. Cayce
Clerk

YUMILICIOUS FRANCHISE, L.L.C.,

     Plaintiff - Appellee

v.

MATTHEW BARRIE; KELLY GLYNN; WHY NOT, L.L.C.; BRIAN GLYNN,

     Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Yumilicious Franchise, L.L.C., a Texas frozen yogurt company, sued the defendant-appellants, franchisees based in South Carolina, after the franchise agreement between them soured. The franchisees responded with a countercomplaint liberally sprinkled with counterclaims. In a series of rulings, the district court granted partial summary judgment in favor of Yumilicious and dismissed the remainder of the franchisees' counterclaims with prejudice for failure to state a claim under Rule 12(b)(6). Because the franchisees failed to plead the required elements of their statutory claims, failed to introduce facts suggesting non-economic injuries, failed to introduce evidence of fraudulent inducement, and contractually waived their right to punitive and

No. 15-10508

consequential damages, we AFFIRM the district court's grant of partial summary judgment and AFFIRM the dismissal of the franchisees' remaining counterclaims.

## I.

Yumilicious is a growing company that franchises frozen yogurt restaurants in Texas. In 2010, Matthew Barrie, Kelly Glynn, and Brian Glynn, the principals of Why Not, L.L.C., entered into an agreement to franchise two Yumilicious frozen yogurt locations in South Carolina. The franchise agreements bound Yumilicious and Why Not. Barrie, Kelly Glynn and Brian Glynn also personally guaranteed Why Not's obligations under the franchise agreements.

Yumilicious filed this lawsuit against Why Not and the individual defendants (collectively "Why Not") alleging Why Not breached the franchise agreement when it closed one of its stores without permission and failed to make payments for royalties and products. Why Not counterclaimed asserting breach of contract, fraud, fraudulent and negligent inducement, and violations of the Texas Deceptive Trade Practices Act, the Business Opportunity Act of Texas, and the Federal Trade Commission Act Disclosure Rules (the Franchise Rule). Why Not alleged that Yumilicious induced it to enter the franchise agreements by mentioning pending negotiations with national suppliers but that the South Carolina stores were doomed from the start because Yumilicious did not conclude those supply agreements. Ultimately, Yumilicious reached an agreement with a Texas regional supplier that would only ship products to South Carolina by the pallet, a quantity too large for one or two stores to use economically. Why Not also argued it was unable to obtain product from a national supplier at prices similar to the amount paid by Texas franchisees to the Texas regional supplier.

2

No. 15-10508

The district court first dismissed Why Not's breach of contract, negligent misrepresentation and fraud claims as inadequately pleaded and its Deceptive Trade Practices Act, Federal Trade Commission Act and Business Opportunity Act claims as time-barred. *Yumilicious Franchise, L.L.C. v. Barrie* (*Yumilicious I*), No. 3:13-cv-4841-L, 2014 WL 4055475 (N.D. Tex. Aug. 14, 2014). Why Not amended its pleading by adding a fraudulent inducement claim and asked for reconsideration of the time-barred claims. The district court concluded the statutory claims were not time barred but failed as inadequately pleaded. *Yumilicious Franchise, L.L.C. v. Barrie* (*Yumilicious II*), No. 3:13-cv-4841-L, 2015 WL 1822877 (N.D. Tex. Apr. 22, 2015). The district court also granted summary judgment for Yumilicious on Why Not's counterclaims based on fraud, negligent misrepresentation, and fraudulent inducement and on its request for consequential and punitive damages and attorneys' fees. *Yumilicious Franchise, L.L.C. v. Barrie* (*Yumilicious III*), No. 3:13-cv-4841-L, 2015 WL 1856729 (N.D. Tex. Apr. 23, 2015). The district court *sua sponte* directed the parties to address whether Why Not's remaining claims relating to the Franchise Disclosure Document failed as a matter of law or were inadequately pleaded. After briefing, the district court concluded those claims failed for lack of a private right of action under the Federal Trade Commission Act and dismissed them with prejudice. *Yumilicious Franchise, L.L.C. v. Barrie* (*Yumilicious IV*), No. 3:13-cv-4841-L, 2015 WL 2359504 (N.D. Tex. May 18, 2015). The district court also found for Yumilicious on its breach of contract claims and ordered Why Not to pay damages. Why Not appeals the dismissal of its counterclaims. It does not challenge the dismissal of its contract claims or the finding in favor of Yumilicious on Yumilicious's breach of contract claim.

## II.

We review a district court's dismissal for failure to state a claim *de novo*. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). We take

No. 15-10508

all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff (or here, the counterclaimant), and ask whether the pleadings contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We consider in turn each of Why Not's claims that were dismissed under Rule 12(b)(6).

## A.

Why Not alleged that Yumilicious's conduct in negotiating the franchise agreements violated the Texas Deceptive Trade Practices Act (DTPA) and the Texas and South Carolina Business Opportunity Acts (BOA).[1] The Texas Business Opportunity Act explicitly states that violations of its terms give rise to a deceptive trade practice claim under the DTPA but does not itself provide a cause of action. Tex. Bus. & Com. Code § 51.302. Therefore, the Texas BOA and Texas DTPA claims are properly considered a single claim under the Texas DTPA. Why Not, therefore, has one Texas statutory claim for violations of the Texas Deceptive Trade Practices Act's ban on misrepresentation or omission. Tex. Bus. & Com. Code §§ 17.46 (defining a deceptive trade practice), 17.50

---

[1] Why Not refers to the South Carolina Business Opportunity Act's title in its countercomplaint and its briefing on appeal, but at no point does Why Not provide any citations to the relevant statutory provisions or to any cases applying the statutory provision. Any argument based on that statute, therefore, is waived and the claim is abandoned. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief if, is deemed to have waived it." (quoting *Knatt v. Hosp. Serv. Dist. No. 1*, 327 F. App'x 472, 483 (5th Cir. 2009)); Fed. R. App. P. 28(a)(8)(A) (requiring parties to brief arguments "with citations to the authorities"); *Estraude v. Dept. of Agric.*, 166 F. App'x 712, 714 (5th Cir. 2006) (claim not adequately briefed is abandoned).

No. 15-10508

(creating a private cause of action for a consumer injured through detrimental reliance on a deceptive trade practice).

The Texas DTPA makes it illegal for a seller or franchisor to "represent[] that goods or services have … characteristics [or] benefits … which they do not have" or to "fail[] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Tex. Bus. & Com. Code §§ 17.46(b)(5), (b)(24). In short, § 17.46(b)(5) bans misrepresentations made by a franchisor while § 17.46(b)(24) bans omissions made by a franchisor.

Why Not alleged that Yumilicious violated these provisions because: (1) Yumilicious failed to provide updated disclosures or an updated Franchise Disclosure Document (FDD)[2]; (2) the FDD Yumilicious did provide did not contain disclosures regarding approved vendors or distributors for required products; (3) the information disclosed by Yumilicious in the FDD underestimated start-up costs; and (4) the FDD included some but not all financial performance information previously disclosed by Yumilicious.

Why Not also alleged that Yumilicious's CEO made statements to Why Not indicating Yumilicious was preparing "to go national and supply products to stores outside Texas" and gave repeated assurances that Yumilicious was in the process of negotiating a contract with a national distributor who would offer fair shipping costs.

---

[2] Why Not argues the FDD was not "updated" because Why Not received the document in May 2010 but it was dated June 8, 2008. Why Not did not suggest that any of the actual information in the FDD was erroneous or that Yumilicious omitted known material facts form the FDD. Furthermore, Why Not did not allege that it detrimentally relied on any of the disclosures in the FDD.

5

No. 15-10508

None of Why Not's allegations satisfy the statutory requirements for a private cause of action under § 17.50.  To begin, Why Not must allege Yumilicious committed a deceptive trade practice as defined by § 17.46. Why Not did not allege that Yumilicious knew any details about the start-up costs,[3] financial performance, or other items discussed in the FDD that it allegedly failed to disclose.  Furthermore, Why Not acknowledged that it knew throughout negotiations that it would have to obtain supplies from the current supplier in pallet-sized orders.  Section 17.46(b)(24), however, "requires intentional omission of a material fact by a Seller for the purpose of duping the customer." *Sidco Prods. Mktg, Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1100 (5th Cir. 1988) (discussing then § 17.46(b)(23) which has since been renumbered (24)). Because "one cannot be held liable under the DTPA for failure to disclose facts about which he does not know," Why Not did not allege any illegal omissions. *Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982).

Nor do the statements made by Yumilicious's CEO constitute misrepresentations under § 17.46(b)(5). Yumilicious's CEO represented that the company was in negotiations with a national supplier when the company's conversations with Why Not took place. The parties agree that Yumilicious was in such negotiations at the time. The failure of those negotiations does not make the prior statement false. Why Not did not allege that Yumilicious promised to conclude an agreement with a national supplier. Without an affirmative misrepresentation or material omission, Why Not's claim did not state a deceptive trade practice under § 17.46(b)(5).

---

[3] Why Not's complaint acknowledges that start-up costs were inflated as a result of errors made by other parties, rather than by Yumilicious.

Even if Yumilicious's conduct during negotiations did constitute a deceptive trade practice under the Texas DTPA, Why Not would also have to show that: (1) Why Not is a consumer protected by the DTPA; (2) Why Not relied on the information provided by Yumilicious in the Franchise Disclosure Documents; and (3) Why Not suffered injury as a result of its reliance on the information. Tex. Bus. & Com. Code § 17.50. Why Not pleaded none of these elements required for a valid cause of action. Dismissal with prejudice was appropriate.

## B.

Why Not also counterclaimed that Yumilicious violated the Federal Trade Commission's Franchise Rule by making the same incomplete disclosures that are the basis of Why Not's Texas DTPA claim. The trial court dismissed this counterclaim with prejudice.

The Federal Trade Commission Act (FTC Act) does not provide for private causes of action. *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978). Why Not argues that the Texas BOA incorporates the FTC Act and the rules promulgated by the Federal Trade Commission and that any violation of an FTC rule is a *per se* violation of the Texas Business Opportunity Act and, through the Texas DTPA, creates a cause of action. We disagree. The Texas DTPA explicitly states that "a violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter [unless it] is declared by such other law to be actionable under this subchapter." Tex. Bus. & Com. Code § 17.43. The BOA explicitly states that failures to comply qualify as deceptive trade practices and are actionable under the Texas DTPA, Tex. Bus. & Com. Code § 51.302, but no provision of Texas or federal law declares violations of the Franchise Rule are actionable deceptive trade practices under the Texas DTPA. The Texas BOA and the Texas DPTA both instruct courts to "follow the interpretations given by the Federal Trade Commission and the

No. 15-10508

federal courts to Section 5(a)(1), Federal Trade Commission Act, and 16 CFR Part 436." Tex. Bus. & Com. Code §§ 51.004(b), 17.46(c)(1). These directives, however, do not declare any violation of an FTC rule recoverable under Texas law. They merely instruct Texas courts to conform their interpretation of Texas law to the existing federal precedent to the extent that the two bodies of law overlap.

Because no provision of Texas law directly incorporates the requirements of the FTC's Franchise Rule, Why Not can only recover for any alleged violation of the Franchise Rule to the extent that the alleged behavior violates some other provision of Texas law. We have already concluded that Why Not failed to plead an actionable claim under the Texas Deceptive Practices Act. Texas law does not allow a claim arising from the same conduct based merely on the FTC's rules. Therefore the district court did not err when it dismissed Why Not's FTC claims based on allegedly incomplete disclosure in the FDD. Even if violation of the Franchise Rule were a deceptive trade practice, Why Not's counterclaims would nevertheless be subject to dismissal because Why Not failed to plead the other elements required by § 17.50, namely status as a consumer, detrimental reliance, and injury.

## C.

Why Not also argued that the district court erred when it dismissed Why Not's claims based on the Franchise Disclosure Documents with prejudice. We review a district court's denial of leave to amend for abuse of discretion. *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Id.*

Why Not stated its motion to amend in only a single sentence in its response to Yumilicious's second motion to dismiss. *See United States ex rel.*

No. 15-10508

*Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion with the contemplation of Rule 15(a)." (citation omitted) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)). Why Not did not include its proposed amendment, as required by the Northern District's local rules, nor did it make an argument as to why leave to amend was appropriate. When, after more than a year of litigation, Why Not's assorted claims melted down, the district court was under no obligation to give Why Not leave to amend its countercomplaint. Given that more than fifteen months elapsed between Yumilicious's first motion to dismiss the countercomplaint, which should have alerted Why Not to the potential deficiencies in its pleadings, and the district court's dismissal of Why Not's remaining claims, the district court did not abuse its discretion in dismissing the remaining claims with prejudice.

## III.

After the district court dismissed Why Not's contract claims, Why Not reframed the claims as torts on theories of fraud, negligent misrepresentation, and fraudulent inducement. Yumilicious obtained summary judgment in its favor on these tort counterclaims and on its own affirmative claims for breach of contract and attorney's fees. Why Not appeals the adverse summary judgment on its counterclaims but does not challenge the ruling on Yumilicious's affirmative case.

We review a grant of summary judgment *de novo*, applying the same legal standards used by the district court. *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

No. 15-10508

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Little v. Liquid Air Corp.*, 37 D.3d 1069, 1075 (5th Cir. 1994). "Where the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material can exist." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## A.

The district court concluded that Why Not's tort claim of negligent misrepresentation failed in part because Why Not introduced no evidence that Yumilicious's actions caused injury and in part because it was barred by the economic loss rule. In Texas, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* at 12–13. Why Not's fraud and negligent misrepresentation claims are based on its franchise agreements with Yumilicious. As the district court concluded, "[d]efendants' fraud and negligent misrepresentation claims are tied directly to the Franchise Agreements and arise solely from the contractual relationship between the parties." *Yumilicious III*, 2015 WL 1856729, at *7. Therefore, the economic loss rule dictates that any losses Why Not suffered as a result of the franchise agreements give rise to claims sounding in contract, not tort.

Why Not argues that *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.*, exempts its claims from the economic loss rule. 960 S.W.2d 41 (Tex. 1998) (rejecting the independent injury requirement for fraudulent inducement claims). This argument fails—the district court relied on the

10

economic loss rule only in relation to negligent misrepresentation claims, not the fraud or fraudulent inducement claims.  Because "[t]he *Formosa* opinion's rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation or negligent inducement," *D.S.A., Inc. v. Hillsboro Ind. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998), the district court did not err when it granted Yumilicious summary judgment on Why Not's negligent misrepresentation claim.

### B.

Why Not alleged that it was fraudulently induced to enter the franchise agreements by Yumilicious's CEO, who assured Why Not that Yumilicious could supply the South Carolina locations at prices identical to those paid by the Texas locations. Why Not failed to introduce any evidence of the CEO's statements in the summary judgment record. To the extent these claims rely on Yumilicious's statements about negotiations with a national supplier, Why Not has not introduced any evidence that Yumilicious made false statements or material omissions. "[P]leadings are not summary judgment evidence." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Without affidavits, declarations, depositions testimony or some other concrete evidence in the record concerning the CEO's statements or Yumilicious's deliberate misstatements about negotiations with suppliers, Why Not did not create a triable issue of fact on its fraudulent inducement claims. Even if Why Not had introduced evidence showing a triable issue of fact on whether Yumilicious made misleading statements, the franchise agreement contains an explicit clause stating that "Franchisee acknowledges that it has conducted an independent investigation of the business venture contemplated by this agreement" and explicitly disclaims reliance on any express or implied statements about potential volume, profits or success of the business. Under Texas law, a statement disclaiming reliance is sufficient to waive fraud-based

claims. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) ("Reliance is an element of fraud …. [A] release that … disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement.").

## C.

The individual counter-plaintiffs pleaded a claim for consequential and punitive damages. The district court granted summary judgment in Yumilicious's favor based on the waiver agreements that Why Not's principals signed as part of their personal guarantee contracts. The individual counter-plaintiffs argue they are not bound by the waiver clause in the franchise agreements because they signed no documents containing any waiver.

Kelly Glynn, as a principal of Why Not, executed the franchise agreement that contained a section titled "XIX.K  WAIVER OF PUNITIVE DAMAGES." This provision explicitly waives punitive damages and limits each party in the agreement to "equitable relief and to recovery of any actual damages it sustains." The clause is in boldface and all capital letters. It complies with Texas's requirement that damages waivers be conspicuous. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993) ("A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals … is conspicuous." (quoting Tex. Bus. & Com. Code § 1.201(10))). All of the individual counter-plaintiffs executed personal guarantees containing a clause in which they made "all of the covenants, representations, warranties and agreements of the Principals set forth in the Franchise Agreement … including … Section XIX.K." The personal guarantee, therefore, binds the

individual counter-plaintiffs to the damages waiver contained in the franchise agreement and waives their claims for punitive and consequential damages.[4]

## IV.

This lawsuit between a frozen yogurt maker and its former franchisee involves a large serving of claims and counterclaims piled precariously together. This saccharine swirl of counterclaims suggests that litigants, like fro-yo fans, should seek quality over quantity. Because Why Not failed to plead the required elements of its statutory claims and failed to create a triable issue of fact on its tort claims, we AFFIRM the district court's judgment dismissing Why Not's claims and granting partial summary judgment to Yumilicious.

---

[4] Why Not also argues the waiver clause does not restrict it from recovering attorneys' fees but, as the district court tartly observed, Why not failed to argue an entitlement to attorneys' fees under any provision of Texas Law. Yumilicious is therefore entitled to summary judgment on Why Not's claim for attorneys' fees.