## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10900

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2019

Lyle W. Cayce
Clerk

AUDREY DICK,

      Plaintiff - Appellant

v.

COLORADO HOUSING ENTERPRISES, L.L.C.; COMMUNITY
RESOURCES AND HOUSING DEVELOPMENT CORPORATION,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-533

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

The plaintiff obtained a $100,000 loan from the defendants to open a restaurant with her husband. The loan was secured by a deed of trust on their condominium. The plaintiff stopped making payments and repeatedly thwarted foreclosure attempts by filing bankruptcy petitions. After the third

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10900

such filing, the bankruptcy court ordered *in rem* relief and the defendants successfully foreclosed.

The case before us now concerns the plaintiff's claims of breach of contract, wrongful foreclosure, negligent misrepresentation, violations of the Texas Debt Collection Practices Act, unjust enrichment, quiet title, and trespass to try title. The district court granted the defendants' motion to dismiss all these claims, as well as partial summary judgment on their counterclaim for a declaratory judgment recognizing their ownership rights in the property. We AFFIRM.


FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Audrey Dick, obtained a $100,000 loan from the defendants, Colorado Housing Enterprises, L.L.C. and Community Resources and Housing Development Corporation ("CHE") in November 2014. The loan was financing for the plaintiff and her husband, Ty Dick, to open a restaurant in Canon City, Colorado. Mrs. Dick executed a promissory note with a 15-year term and a 6.5% interest rate. The note was secured by a deed of trust granting the defendants a lien against the Dicks' condominium in Irving, Texas.

The plaintiff stopped making payments by August 2015. The Dicks had closed their restaurant at least in part due to Mr. Dick's struggles with injuries suffered when he served with the U.S. military in Iraq. The defendants sent notices of default and foreclosure warnings in September and November, and a final demand on December 7, 2015. On March 31, 2016, the defendants sent notice of an acceleration of the loan and a foreclosure sale scheduled May 3.

The plaintiff alleges that her husband called the defendants in April 2016 to discuss bringing the loan current because the Dicks "would likely have around $20,000 in equity" upon the sale of their Colorado home. The defendants allegedly told Mr. Dick they "would not accept any form of payment

2

other than the fully accelerated loan amount" and that the Dicks could "'do whatever they had to do' but that [d]efendants were moving forward with foreclosure."

On May 1, 2016, the plaintiff filed for Chapter 13 bankruptcy, triggering an automatic stay and preventing the foreclosure scheduled for May 3. The petition was dismissed for failure to file numerous required documents.

A new foreclosure date was set for August 2, but on July 29 the plaintiff filed a second Chapter 13 petition, once again triggering an automatic stay and preventing foreclosure. The petition was dismissed because of a failure to pay the filing fee, this time with prejudice to Mrs. Dick's refiling for bankruptcy for 180 days pursuant to 11 U.S.C. § 109(g)(1).

A third foreclosure date was set for October 4, 2016. Once again, the plaintiff prevented foreclosure by filing a Chapter 13 petition — this time on her husband's behalf — which invoked an automatic stay. The bankruptcy court dismissed the petition for failure to prosecute, ordered *in rem* relief to ensure foreclosure could not be stopped by further bankruptcy filings, and barred Mr. Dick from filing in bankruptcy for two years.

A fourth foreclosure attempt was scheduled, this time for February 7, 2017, but it too was thwarted after the plaintiff filed suit in Texas state court and obtained a temporary restraining order five days before the scheduled sale. The defendants removed that suit to federal court, which terminated the state court's TRO. They rescheduled the property for foreclosure on April 4, 2017. The district court allowed a foreclosure sale finally to occur on the appointed day.

The plaintiff then filed an amended complaint alleging breach of contract, wrongful foreclosure, negligent misrepresentation, violations of the Texas Debt Collection Practices Act, unjust enrichment, quiet title and trespass to try title. The district court granted the defendants' motion to

dismiss all claims. Also granted was the defendants' motion for partial summary judgment on their counterclaim for a declaratory judgment recognizing the defendants' ownership rights in the property. The plaintiff timely appealed.

## DISCUSSION

The plaintiff admits to defaulting on the loan. Without stating some claim to relief against the defendants, she cannot deny that the foreclosure was lawful. We examine her arguments that she sufficiently stated a claim for relief.

### I.  *Motion to Dismiss*

We review the "district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. A district court's Rule 12(b)(6) dismissal may be affirmed on any grounds raised below and supported by the record." *Republic Waste Servs. of Tex., Ltd. v. Texas Disposal Sys., Inc.*, 848 F.3d 342, 344 (5th Cir. 2016) (citations omitted).

#### A. *Breach of Contract*

The plaintiff alleges the defendants failed to honor her right to reinstatement after the loan was accelerated. She relies on paragraph 19 in the Deed of Trust, which is titled "Reinstatement After Default." It provides that if there is an acceleration of the secured debt, the debtor "shall have the right to have any proceedings begun . . . to enforce this Deed of Trust discontinued and to have this Deed of Trust reinstated at any time before the day of the Trustee's Sale or before the filing of a foreclosure action." This, of course, is a conditional right. The debtor needed to (1) pay "the entire amount due . . . other than such portion of the principal as would not be due had no

default occurred;" (2) "[c]ure all defaults;" and (3) "[p]ay costs and expenses incurred" in enforcing the Deed of Trust, including any attorneys' and recording fees.

The plaintiff did none of this. In fact, after defaulting she never made another payment of any kind on the debt. She nonetheless insists this was because the defendants "refused" to communicate the amount of payment necessary for reinstatement, and that this refusal breached the Deed of Trust by effectively extinguishing her right to reinstatement.

The Deed of Trust does not contain any explicit obligation on the defendants to notify the plaintiff of the reinstatement amount. Though a "duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract," there is not any "precedential authority to support the existence of an implied covenant to provide a payoff amount in a transaction involving a promissory note and deed of trust." *Graves v. Logan*, 404 S.W.3d 582, 585-86 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citation omitted).

In determining how such a rule operates here, we start with what plaintiff alleges was the breach of this contract. She claims the defendants failed to fulfill their implied duty to cooperate with respect to the reinstatement provision in the Deed of Trust. The duty to cooperate is a "promise that a party will not do anything to prevent or delay the other party from performing the contract." *Texas Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 698 (5th Cir. 1989).

The appropriate question, then, is whether the defendants prevented the plaintiff from reinstating the loan. The complaint focuses primarily on an alleged "refusal" to provide the reinstatement amount to Mr. Dick when he called in April 2016. In those calls, Mr. Dick attempted to prevent foreclosure

by telling the defendants that he and his wife "would likely have around $20,000 in equity" to bring the loan current once they sold their Colorado home.

The complaint does not allege that the Dicks attempted to make a reinstatement payment, but rather that Mr. Dick promised a potential payment, on some uncertain future date, of an uncertain amount "likely" to be more than $20,000. At most, Mr. Dick conveyed a present intention to seek reinstatement in the future.

Whatever the scope of the defendants' duty to cooperate on reinstatement, it was not invoked by "mere statements of intention" or an "illusory promise" of future payment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. e (1981). There was nothing to cooperate on yet since the Dicks were not attempting to reinstate the loan at that time.[1]

The complaint also alleges that Mr. Dick called in October 2016 "to try to make a payment to bring the Loan current without paying the entire accelerated amount," but was told it was "too late." At this point, the plaintiff had "filed bankruptcy three times to stop" the defendants from foreclosing but had "not ever intended to prosecute any of those cases . . . appropriately." Tr. of Hr'g at 12, *In re Dick*, No. 16-BR-33914 (Bankr. N.D. Tex. Apr. 17, 2017) (ECF No. 57).[2] The Deed of Trust provides for a right of reinstatement "at any time before the day of . . . [s]ale," but the only reason that day had not yet arrived was the Dicks' improper use of the bankruptcy courts.

---

[1] This renders irrelevant the complaint's allegation that the defendants said they "would not accept any form of payment other than the fully accelerated loan amount" and that the Dicks could "'do whatever they had to do' but that [d]efendants were moving forward with foreclosure."

[2] "It is 'clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 n.8 (5th Cir. 2015) (quoting *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

No. 18-10900

Whether these filings entitled the Dicks to additional time or not, the defendants ultimately afforded them one last opportunity before foreclosure. On February 8, 2017, the defendants' counsel informed the plaintiff's counsel that the "current amount to reinstate the loan is $34,188.86," and asked whether the Dicks would be sending the funds.[3]

Even if there were an obligation to provide a reinstatement amount, which is unclear under Texas law, the plaintiff does not adequately explain why the February 2017 notice would fail to satisfy it. She does argue it was "too late" and that she was "not able to tender" the amount because her funds were "depleted due to multiple bankruptcy filings." Those filings, though, were the Dicks' choice, and there is no other allegation on how being told that amount earlier would have allowed it to be satisfied.

### B. *Negligent Misrepresentation*

Negligent misrepresentation sounds in tort. In Texas, the economic loss rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12-13 (Tex. 2007)). The doctrine applies unless the "duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

---

[3] While not referenced in the complaint, the plaintiff readily acknowledged this in her district court filings and in her brief on appeal. "We can appropriately treat statements in briefs as binding judicial admissions of fact." *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990).

The complaint alleges that during the April and October 2016 phone calls, the defendants negligently misrepresented to Mr. Dick that "reinstatement was not an option" and that "there was nothing [the] Plaintiff could do to stop a foreclosure." The plaintiff's claim that these misrepresentations prevented her from reinstating the loan merely repackages her claim for breach of contract based on the duty to cooperate. It is therefore barred by the economic loss rule.

### C. *Texas Debt Collection Practices Act*

The Texas Debt Collection Practices Act applies only to consumer debt, not commercial debts. *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 135-36 (5th Cir. 1995). "'Consumer debt' means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE ANN. § 392.001.

The claim was properly dismissed because the complaint's allegation that the loan was to open a restaurant constituted an admission it was not a consumer debt. *See First Gibraltar Bank*, 62 F.3d at 135-36.

### D. *Unjust Enrichment*

"In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). The promissory note and deed of trust are clearly valid, express contracts that govern the subject matter of this dispute.

The plaintiff argues she is entitled to plead in the alternative, but she failed to plead facts sufficient to state an alternative theory of unjust enrichment. The complaint never alleges, even in the alternative, that there was no valid express contract to govern the parties' dealings.

No. 18-10900

### E. *Wrongful Foreclosure, Quiet Title and Trespass to Try Title*

Another claim dismissed in district court was for a wrongful foreclosure. Any error in that dismissal has not been discussed on appeal, and thus we do not reach it. Relatedly, though, the plaintiff's suit sought to quiet title and to pursue a trespass-to-try-title action. Those actions are governed by Texas law and have different requirements. *See Lance v. Robinson*, 543 S.W.3d 723, 735-39 (Tex. 2018). To quiet title, a plaintiff must show the defendant's title is invalid. *Vernon v. Perrien,* 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). For a trespass to title, a plaintiff must demonstrate its own title is valid, and the claim does not focus on the weakness of anyone else's title. *Id.* at 60. Here, the plaintiff's inability to undermine the validity of the foreclosure means both of those causes of action fail.

### II.    *Motion for Partial Summary Judgment*

Summary judgment "is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Republic Waste Servs.*, 848 F.3d at 344. Our review on appeal is *de novo. Id.*

The district court granted partial summary judgment on the defendants' counterclaim for a declaratory judgment recognizing their ownership and possession rights in the property. The Deed of Trust was shown to be valid. The dismissal of all the plaintiff's claims leaves no disputes about the rightful ownership and control over the property. A judgment recognizing the defendants' rights in the property was appropriate.

AFFIRMED.